CASES DETERMINED IN THE

# COURT OF APPEALS

OF THE

# STATE OF NEW YORK,

NOT REPORTED IN FULL IN THE REGULAR SERIES OF REPORTS, FROM
JANUARY 1889, WITH ANNOTATIONS.

---

ELIZA ANN LONGENDYKE *et al.*, Respondents, *v.* CHARLES
ANDERSON, Appellant.

*Court of Appeals, January* 19, 1886.

Reversing same case, 30 Hun, 220, Mem.

1. *Right of way. Easement.*—A non-continuous easement, like a right of
   way, will pass only by words sufficient to create a new easement,
   and annex it to the newly made dominent tenemant, and the word
   "appurtenances" is not sufficient.
2. *Same*—An owner of land, if he does not intend to part with an ease.
   ment in a road situate on such land, must reserve it, when convey-
   ing by a full covenant deed. After a conveyance with covenants
   of warranty, he cannot claim an easement in land, his entire right
   in which has passed by his deed ; nor can his grantees claim it.

*R. E. Andrews* and *Joseph Hallock*, for appellant.

*J. L. Warner*, for respondent.

FINCH, J.—The sole question in this case is whether the
plaintiffs are the owners, by a sufficient and effective grant.
of a right of way over the lands owned by the defendant.
The action is brought in equity, and aims to establish the
right claimed, and to restrain any interference or obstruc-
tion. The course of the trial takes out of the case any title
by prescription, or flowing from user, and, unless we can
trace a title by grant which has passed to the plaintiffs, the
judgment is wrong, and there must be a new trial. The
premises of both parties are situated in what was the " Lov-

eridge Patent," in 1686, and a portion of which became the property of Dennis and Jacobus Hegeman, who, in 1760, released to each other, and held to some extent in severalty. Jacobus conveyed to Spawn & Burger, and Dennis to Paulus Smith. The premises covered by these conveyances are shown upon a map put in evidence, which is conceded to be substantially correct. By that it appears that the tract owned by the Hegemans was nearly in the shape of a parallelogram, extending westerly from the Hudson river to what is called the "Kalckberg;" but narrow at the western end, and growing steadily wider by the spread of its northern and southern lines as the river is approached. By these conveyances Spawn & Burger, on the one hand, and Paulus Smith, on the other, became the owners of the Hegeman tract, partly in severalty, and partly as tenants in common. The principal dividing line between them ran north and south through nearly the middle of the tract; Spawn & Burger on the east and Paulus Smith on the west; and their respective premises extending entirely across the parallelogram, and so blocking Smith's access to the river, and Spawn & Burger to the Kalckberg. But these grantees took also from the Hegemans two parcels which were held by them in common, one in the northeast corner of the parallelogram, and lying on the river; and one in the southwest corner at the Kalckberg. Smith could not get to his river lot except by crossing Spawn & Burger's lot, and the latter could not get to the Kalckberg without crossing the lands of Smith; so that a way open to both parties from the river to the hill was a matter of necessity. Accordingly we find that the respective deeds reserved a right to each to cross the lands of the other by a way or road which ran from near the Canoe place on the river to the Kalckberg.

It is described as "liberty for a road in the most convenient manner," and the existing emergency renders it highly probable that such a way, substantially through the middle of the track, was established and used. By the death

of Paulus Smith his lands passed to his son Frederick, who retained the right to the river, and was burdened with the corresponding right to the hills.   Before his death, as appears by the recital in one of the deeds, Paulus Smith divided with Spawn & Burger the two lots on the river and at the Kalckberg, so that thereafter each held his position in severalty instead of in common.   The two lots of Smith are numbered on the map as No. 3 and No. 6 ; the former lying on the hill, and the latter on the river.   In 1774, Frederick Smith conveyed to Johannes Sax and Margaret, his wife, the south half of his main farm, and undivided half of No. 3 and No. 6, and at the same time conveyed to Nicholas Trumpbour, and Elizabeth, his wife, the north half of the main farm, and a moiety of No. 3 and No. 6.   Both parties claim title under Frederick Smith, through these deeds ; the plaintiffs under Sax, and the defendant under Trumpbour. The latter chain of title seems to be substantially complete ; but in the former there is a break—no conveyance proved showing a transfer from Sax to Abram Post, from whom plaintiff's title came.

Assuming, as we deem probable, that such difficulty might be surmounted, it became important to consider whether the deed of Frederick Smith to Sax gave him any right of way over the north half conveyed to Trumpbour. The first provision relates wholly to the burden resting upon the land by reason of the right of way belonging to Spawn & Burger.   In severing the land burdened, Smith evidently desired and sought to equalize the burden between his grantees; and so he provided, in each of the deeds:

"Always saving and reserving a road for Philip Spawn and Johannes Burger, their respective heirs and assigns, from the landing place at Green Island to the Kalckberg ; and if one-half of the road cannot conveniently be laid on the northernmost moiety or half part, and the other half on the southernmost moiety or half part, in that case the par-

ties holding said parts are to allow land in compensation to the parties who shall bear the greatest half of the road, so much as is above the one-half; so that it may always be understood, and it is the intent and meaning of these presents, that each half lot shall bear half the road, or allow land in compensation of the same."

It is apparent from this provision that the right of way which belonged to Spawn & Burger over the Smith lot had either not been specifically located, or was intended to be changed so as to impose equality of burden upon the several parcels. If the road ran along the line, it was merely a right of way for Spawn & Burger. Nothing else was reserved. Sax got no right upon Trumpbour's land, and the latter none upon the premises of the former. Each simply owned the fee up to his own line. If each used it, as is quite probable, it was by mutual assent or common sufferance, and not by virtue of a reservation which only recognized and provided for the right of others than themselves.

We pass now to other parts of the deed, to see if Sax acquired any interest in Trumpbour's land occupied by Spawn & Burger's easement. The conveyance adds:

" With full and free liberty to and for the said Johannes Sax, his heirs and assigns, to have a free landing to Hudson river, to erect a store-house, land goods, store wood, stack hay, and fence the same; and also to have a canoe at a place called the 'Canoe place;' * * * and also free liberty of passing and repassing at all times, into, through, and out of the said last mentioned lot No. 6, to and from the said canoe place, with horses, wagons and other carriages; and also to the like liberty of passing and repassing at all times, as well over and through lot number 5 as lot number 4 of the said division, to and from the said lot number 6 and common landing."

Recurring again to the map, we find that lots 4 and 5 were respectively the lots of Spawn & Burger. The rights thus conveyed to Sax—and the same were given to Trump-

bour—secured to him : *First,* a landing on the river, and a right of way from that landing to lot number 6. This right was a burden only upon Spawn & Burger's land. And, *second,* the deed conveyed to Sax and Trumpbour, respectively, a right of way across lots 4 and 5 to lot 6 and the landing. This, again, conveyed the easement in Spawn & Burger's lands, lying to the eastward and between Smith and the river, and purported to give neither to Sax nor Trumpbour any right, one in the lands of the other. These deeds, it will be observed, make no mention of a right of way for either Sax or Trumpbour westward to the Kalckberg ; and the reason becomes apparent when we examine the map. Sax needed no such right, for his south half adjoined No. 3, and access to his moiety of it was wholly within his own discretion. Trumpbour could reach it at the intersection where his southwest corner and the northeast corner of number 3 became identical. In so doing he would cross the corner of Sax, to which his deed gave him no right, but which might possibly be a way of necessity, and both parties could avail themselves of the right given across lots 4 and 5, without either trespassing upon the land of the other. It is difficult to see, therefore, how reserving a right of way to Spawn & Burger along the line between Sax and Trumpbour could give to either of the latter a right not granted in the land of the other. It did not pass under the word " appurtenances." Even if, at the date of their deeds, the road existed along the line which the conveyance makes somewhat improbable, the right of way would only be Spawn & Burger's, and an appurtenance of their lands. This right of way in Smith, and before severance, was in no sense an easement, since he owned the fee, and passed and repassed by virtue of his ownership. When he severed that ownership, there was no easement of his to pass. He might, indeed, create one ; but a non-continuous easement, like a right of way, will pass only by words sufficient to create a new easement and

annex it to the newly made dominant tenement, and the word " appurtenances " is not sufficient.   Parsons *v.* Johnson, 68 N. Y. 66.   We do not see, therefore, how Sax's deed gave him any right in the lands of Trumpbour.

We 'have read carefully and given much consideration to the view taken by the learned trial judge.   The whole force of that argument lies in the assumption that, as to the adjoining owners, the road along the line, existing solely for the benefit of third parties, was held by such owners as tenants in common.   That is untrue in point of fact.   Each owned in severalty and in fee his own half of the road, and, so far as it was an easement, it belonged wholly to Spawn & Burger, to whose lands alone it was appurtenant; and Sax and Trumpbour could not be tenants in common in an easement which they did not own at all.   Very probably the parties would use the road for their own convenience ; but, as against each other, this would be by sufferance, and not by right of way in grant.

There is a further difficulty in the plaintiff's case.   Assuming still that they held under Smith, notwithstanding the break in their chain, they took their title through a deed given to Nicholas Trumpbour, Jr., in 1807, by Abram Post, and a conveyance from the former in 1822 to the predecessor in title of the plaintiffs.   But while Nicholas Trumpbour, Jr., owned the south parcel, and in 1810 he became the owner under the will of Elizabeth Trumpbour, who was the surviving grantee, in joint tenancy of Frederick Smith, of an undivided one-fourth of the north parcel, and thereupon, by a full covenant deed, without reservation or condition, conveyed all the undivided fourth part of the north parcel.   If, then, he had an easement in that part of the road lying on the north parcel, he should have reserved it if he did not mean to part with it.   It is difficult to see how, after this conveyance with covenants of warranty, he could still claim an easement in the land, his entire right in which passed by his deed ; and if he could not claim it, his grantees could

not.   For these reasons we feel constrained to send the case back for a retrial.

Judgment   reversed ;   new   trial   granted ;   costs  to  abide the event.

All concur—ANDREWS, J., on the first ground stated in opinion—except MILLER, J., absent.