(September 28, 1912.)

## E. D. MESEROLE, Appellant, v. FRED E. WHITNEY, Respondent.

[127 Pac. 553.]

TAX SALE—DELINQUENT TAXES—DESCRIPTION OF REAL PROPERTY ON TAX-ROLL.

(Syllabus by the court.)

1. Where real property is owned by Whitney and is a part of section 13, township 1 south, range 6 east, and is described on the assessment-roll as in section 23, and such assessment becomes delinquent and is sold for delinquent taxes by the same description, and is purchased by the county, and thereafter the county issues a deed to said land to Wolfe, and Wolfe executes a deed and conveys said property to the wife of Whitney, the owner of said property at the

time the assessment of taxes is made, Whitney and wife acquire such property as community property, and such purchase will be recognized as the payment of the taxes upon the property owned by Whitney at the time the assessment is made, and Whitney acquires no new title by reason of the transfer from the county, except an acknowledgment upon the part of the county of the payment of such taxes.

2. Where real property has been purchased by the county at a delinquent tax sale, and the tax certificate is held by the county, or the title is held under a conveyance made by the assessor to the county, such property cannot be assessed as long as the title remains in the county, and where the county sells such property to a person, and such property is assessed for taxes to such person, the assessor in making such assessment had no authority or power to make a double assessment which includes an assessment for the year preceding the transfer of said property by the county to such person.

3. Where a double assessment is made under the provisions of sec. 1681 of the Rev. Codes, and such assessment is not paid, and such property is offered for sale for delinquent taxes and sold, and a deed made to the purchaser, and such purchaser relies upon said sale in an action brought against such purchaser to quiet title, and it appears in such assessment that such double taxation is void by reason of the fact that such property was not assessable for one of the years included in such double taxation, and that such assessment is so indefinite and uncertain that it is impossible to separate the assessments for the respective years and determine what part of said taxes was valid and what was invalid, the entire assessment will be held void, and the sale and deed based upon such assessment would convey no title.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. C. O. Stockslager, Judge.

An action to quiet title. Judgment for defendant. *Affirmed.*

B. F. Griffith, for Appellant.

In the absence of anything to show fraud or corrupt motive, errors on the part of an assessor resulting in the unequal valuation of land will not vitiate the tax levied thereon. (*West Portland Park Assn. v. Kelly,* 29 Or. 412, 45 Pac. 901; *People v. Barker,* 144 N. Y. 94, 39 N. E. 13.)

The taxpayer who discovers errors, irregularities or injustice in his assessment must take steps to have it corrected according to the remedies which the law gives him, and if he neglects to do this when he has an opportunity, he will not be allowed afterward to raise objections to the assessment. (*State v. Sadler,* 21 Nev. 13, 23 Pac. 799; *Cal. Domestic Water Co. v. Los Angeles Co.,* 10 Cal. App. 185, 101 Pac. 547; *Eureka Dist. Gold Mining Co. v. Ferry Co.,* 28 Wash. 250, 68 Pac. 727; *City of Los Angeles v. Glassell,* 4 Cal. App. 43, 87 Pac. 241; Cooley on Taxation, p. 1049.)

Defendant was not prevented from paying the taxes involved in this action by either fraud or mistake of the officer charged with the collection of the taxes, or even by a mistake on his (defendant's) part. (*Bacon v. Rice,* 14 Ida. 107, 93 Pac. 511.)

One who takes a conveyance of a tax title can claim no benefit from it if he had actual knowledge of facts which rendered it invalid, or if the records show on their face fatal defects or irregularities. (*Sorensen v. Davis,* 83 Iowa, 405, 49 N. W. 1004; 37 Cyc. 1485.)

The sale of land for taxes is not void where the legal portion of the tax can be clearly and definitely separated from the rest. (*Holcomb v. Johnson,* 43 Wash. 362, 86 Pac. 409.)

Where land is sold for the taxes of several years, and a deed made pursuant to such sale, the deed is valid, if the sale is legal for the taxes of one of the years, though it is illegal as to the taxes of the other years. (*Parker v. Cochran,* 64 Iowa, 757, 21 N. W. 13; *Rhodes v. Sexton & Son,* 33 Iowa, 540; *Hurley v. Powell, Levy & Co.,* 31 Iowa, 64; *Eldridge v. Kuehl,* 27 Iowa, 160.)

If property is a subject of taxation, it cannot escape through some technical failure of the officer to perform his duty unless it has actually misled the party to his injury. (*Co-operative etc. Assn. v. Green,* 5 Ida. 660, 51 Pac. 770; *White Pine Mfg. Co. v. Morey,* 19 Ida. 49, 112 Pac. 674; *Stewart v. White,* 19 Ida. 61, 112 Pac. 677; *McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102.)

W. C. Howie, for Respondent.

The whole tax is illegal, for the reason that it is, in effect, an increase in valuation of the property after its assessment without notice to the taxpayer. (*Mercantile Bank v. Hubbard,* 105 Fed. 809, 45 C. C. A. 66; *Western Ranches v. Custer County,* 28 Mont. 278, 72 Pac. 659; *Adams v. Luce,* 87 Miss. 220, 39 So. 418; *Topeka Water Supply Co. v. Roberts,* 45 Kan. 363, 25 Pac. 855; *Montana Ore Purchasing Co. v. Maher,* 32 Mont. 480, 81 Pac. 13; *Larimer v. McCall,* 4 Watts & S. (Pa.) 133; *Patten v. Green,* 13 Cal. 325; *Dykes v. Lockwood Mortgage Co.,* 2 Kan. App. 217, 43 Pac. 268.)

Assessment for back years for which taxes had actually been paid would be void. (*Western Assurance Co. v. Halliday,* 127 Fed. 830; *Adams v. Luce,* 87 Miss. 220, 39 So. 418; *Douglas v. Short,* 14 N. C. 432; *Iowa R. Land Co. v. Guthrie,* 53 Iowa, 383, 5 N. W. 519.)

A purchase at a tax sale by one upon whom rests the duty of paying the taxes operates merely as a payment of such taxes, leaving the title to stand as if the payment had been made before the sale. (27 Am. & Eng. Ency. of Law, 954; *Moss v. Shear,* 25 Cal. 38, 85 Am. Dec. 94.)

As this 120 acres was sold as Mr. Whitney's land and the county got the money and Mr. Whitney did pay it himself by buying from the party who bought from the county, in good faith, as his land, the land as assessed being treated as being the right assessment and believed at the time by all parties to be the right description, it was certainly improperly back assessed as having escaped taxation. (*Hurd v. City of Melrose,* 191 Mass. 576, 78 N. E. 302; *Graham v. Florida Land & Mortgage Co.,* 33 Fla. 356, 14 So. 796; *Bosworth v. Danzien,* 25 Cal. 297; *Gunn v. Thompson,* 70 Ark. 500, 69 S. W. 261; *Lewis v. Monson,* 151 U. S. 545, 14 Sup. Ct. 424, 38 L. ed. 265; *Richter v. Beaumont,* 67 Miss. 285, 7 So. 357; *Meller v. Hodsdon,* 33 Minn. 336, 23 N. W. 543; *Pfeiffer v. Miles,* 48 N. J. L. 450, 4 Atl. 429; *San Gabriel Land & Water Co. v. Whitneer Bros. & Co.,* 96 Cal. 623, 29 Pac. 500, 31 Pac. 588, 18 L. R. A. 465; *Kellogg v. McFatter,* 111 La.

1037, 36 So. 112; *Wabash R. R. Co. v. People*, 196 Ill. 606, 63 N. E. 1084.)

Wherever property is sold for taxes any part of which is not a proper charge on the property sold, the sale is absolutely void. (*Hardenburgh v. Keod*, 10 Cal. 402; *Muskegon Lumber Co. v. Brown*, 66 Ark. 539, 51 S. W. 1056; *Bucknall v. Story*, 36 Cal. 67; *Mecham v. Town of New Port*, 70 Vt. 264, 40 Atl. 729; *City of New Whatcom v. Bellingham Bay Imp. Co.*, 9 Wash. 639, 38 Pac. 163; *Gage v. Pumpelly*, 115 U. S. 454, 6 Sup. Ct. 136, 29 L. ed. 449; *Baker v. Kaiser*, 126 Fed. 317, 61 C. C. A. 303; *Harvey v. Douglas*, 73 Ark. 221, 83 S. W. 946; *Green v. McGrew*, 35 Ind. App. 104, 111 Am. St. 149, 72 N. E. 1049, 73 N. E. 832; *Landis v. Borough of Vineland* (N. J.), 43 Atl. 569.)

STEWART, C. J.—The appellant commenced this action against the respondent to quiet title to the south half of the southwest quarter and the northeast quarter of the southwest quarter of section 13, township 1 south of range 6 east of Boise meridian. The defendant filed an answer denying the allegations of the complaint and alleged in a cross-complaint that the defendant was the owner of said described real property, and demanded that the title be quieted in the defendant. The cause was tried to the court, and findings of fact were made and conclusions of law, and a decree was entered in favor of respondent. The appeal is from the judgment.

The facts as found by the trial court are as follows: That the land described in the complaint, to wit, south half of the southwest quarter and the northeast quarter of the southwest quarter of section 13, township 1 south of range 6 east of Boise meridian, together with the following described lands not included in the complaint, to wit, the northwest quarter of the northwest quarter of section 24, township 1 south of range 6 east of Boise meridian, all in Elmore county, during the year 1897, were owned in fee by the defendant, Fred E. Whitney, and were duly assessed for county taxes, and that in such assessment, by a mistake, the lands described in the complaint were misdescribed in this, that in said as-

sessment such lands were described as the "E. 2 SW. 4, NE. 4 of SW. 4, section 23" of said township and range, but that the northwest quarter of the northwest quarter of section 24 was properly described in said assessment; that said taxes for the year 1897 were not paid, and the entire 160 acres were sold to Elmore county, July 14, 1897, for the delinquent taxes for the year 1897, and that on August 8, 1898, a deed was issued upon the tax sale to Elmore county for said land; that thereafter, on the 10th day of September, 1900, Elmore county, by order of the board of county commissioners, offered said lands for sale to the highest bidder, and all of said 160 acres were sold to E. M. Wolfe, and a deed issued by the county to said Wolfe, conveying the title to said lands to said Wolfe; that said Wolfe conveyed his title to said lands so acquired by a tax deed from Elmore county to Inez Phelps Whitney, and that said Inez Phelps Whitney is the wife of the defendant, Fred E. Whitney, and that said property so conveyed to Inez Phelps Whitney was community property of the defendant Fred E. Whitney and Inez Phelps Whitney, his wife. That such lands were again assessed to Fred E. Whitney by an assessment of Elmore county for the year 1900, and that 120 acres of said land was again misdescribed, the same being described in said assessment as the east half of the southwest quarter, and the northeast quarter of the southwest quarter, section 23, but that such description was a clerical error, and was intended to be the south half of the southwest quarter and the northeast quarter of the southwest quarter of section 13, and that the said northwest quarter of the northwest quarter of section 24 was again properly described in said assessment; that thereafter, on the 9th day of July, 1901, the board of county commissioners canceled said assessment, for the reason that at the time of said assessment said lands belonged to the county, and thereafter the entire 160 acres were again assessed to the defendant, Fred E. Whitney, for taxes for the year 1901, and was properly described, and the value of the 160 acres was placed in the assessment at $400; that thereafter, and without any notice to Fred E. Whitney, the said northwest

quarter of the northwest quarter of said section 24 was stricken from said assessment of Fred E. Whitney, and the notation made on the assessment-roll that that portion belonged to E. M. Wolfe, but that no change in the valuation of the lands of Fred E. Whitney was made; that the remaining 120 acres was allowed to retain the full valuation of $400 assessed against the whole 160 acres, of all of which said Fred E. Whitney had no notice; that thereafter the assessment of said lands for 1901 was doubled by the assessor of said county, on the grounds that said land escaped assessment for the year 1900, and said taxes not being paid, said lands were sold by said county for taxes on the valuation of $400, and there being no purchaser at the sale, the same was struck off to Elmore county for the lump sum of taxes based on the valuation of $400, said double assessment in July, 1902; that on September 10, 1905, a deed was issued by the assessor of Elmore county for said 120 acres, based upon the sale made in July, 1902, and on the 13th day of July, 1910, Elmore county sold its interest in said lands, and the title acquired under said tax deed, to E. D. Meserole, the appellant, for the sum of $5.00, and made a deed conveying the same to the appellant, and that the same is the only title or claim the appellant has in said lands.

From these facts the court, as a conclusion of law, found:

First, that the sale for the taxes for the years 1900 and 1901, made in July, 1902, was void, and that the plaintiff has no title to said land; second, that the title in said defendant, Fred E. Whitney, in community with his wife, to said lands is good and valid, and that the defendant is the owner in fee of said lands and is entitled to have his title quieted thereto.

A decree was rendered in accordance with the conclusions of law.

It will be observed from the conclusions of law that the trial court found that the sale for taxes for the years 1900 and 1901, made in July, 1902, was void, and that the plaintiff has no title to said land. This conclusion of law is now alleged as error. The record evidence in this case shows that Fred E. Whitney was the owner during the year 1897 of the

south half of the southwest quarter, and the northeast quarter of the southwest quarter, section 13, township 1 south, range 6 east, and also the northwest quarter of the northwest quarter of section 24, township 1 south, range 6 east, and that such lands were assessed for county taxes of that year, and by mistake the lands in section 13 were described upon the assessment-roll as the east half of the southwest quarter, northeast quarter of the southwest quarter of section 23, in said township and range, and the land in section 24 was described correctly; and that such taxes were not paid, and that the entire 160 acres were sold to Elmore county on July 14, 1897, for delinquent taxes; that a deed was also executed upon said sale on August 8, 1898, to the county for said land, and that on September 10, 1900, said lands were sold by Elmore county to E. M. Wolfe, and a deed executed accordingly; and on the 4th day of June, 1902, Wolfe executed a deed conveying said lands to Inez Phelps Whitney, and upon the latter date Inez Phelps Whitney, being then the wife of Fred E. Whitney, the owner of said property at the time such land was assessed in 1897, and at the time such land was sold for delinquent taxes for that year became the owner of whatever title Wolfe had acquired from Elmore county under the tax deed, and such property became the community property of Fred E. Whitney and Inez Phelps Whitney.

It will be observed, therefore, that Elmore county held the title to said land from the date of the tax sale, in July, 1897, up to the 10th day of September, 1900.

It is further shown by the record that the same lands, under the same description, were assessed to Fred E. Whitney by the assessment made for the year 1900, and 120 acres were assessed as in section 23, which was government land and not owned by Fred E. Whitney or his wife, and because of this misdescription the county commissioners made an order of July 9, 1901, as follows:

"In the matter of the 1900 taxes assessed against F. E. Whitney on the following described land: The E. ½ SW. ¼ and NE. ¼ SW. ¼ of Section 23 and the NW. ¼ NW. ¼

Section 24, Township 1, South of Range 6 East, 160 acres. E. M. Wolfe appeared before the Board that he had purchased the above described property from Elmore County, September 10, 1900, and that therefore the property was not assessable for the year 1900. After careful investigation it was found that the foregoing described property was owned by Elmore County in January, 1900, and therefore should not be assessed to F. E. Whitney. Ordered that the Auditor be and he is hereby instructed to give the Assessor credit for the delinquent taxes, the penalty and interest for the year 1900, on the F. E. Whitney land above described.''

In pursuance of the foregoing order, there appears upon the delinquent list book of 1900 the following entry: ''F. E. Whitney (Taxes 1900); Property in Sec's. 23 and 24, T. 1 S. R. 6 E.; 'Property tax cancelled by order Board County Comr's. July 9, 1901, A. G. Smith.' ''

From this order it is apparent that the county commissioners concluded that the title to said land being in Elmore county, it was not subject to taxation for the year 1900, and the entire tax was ordered canceled, and that this included not only the 120 acres which was misdescribed by having been designated as being in section 23 instead of section 13, but also the 40 acres properly described in section 24, and left said 160 acres without taxation, because the title was in the county. Whether this assessment and sale was legal or not, such sale to the county for the taxes and the resale by the county of the land for value is a payment of the taxes, and where the owner becomes the purchaser, such purchase has the effect, as in all other cases, of an actual assessment of the taxes in cash each year, and the county, and likewise Whitney himself, treated such assessment as a sale and conveyance of the land actually owned by Whitney as in section 13.

So, from the evidence, it is apparent that the county treated the assessment and sale as the Whitney land and Whitney so treated it, and accepted and repurchased said land from the county, to whom it was sold for said assessment, and the county has received its money for the sale of the

entire tract, and Whitney purchased not only the 120 acres, but the 40 acres also, and paid the purchase price.

From these facts it is clear that Whitney was the owner of the land at the time the assessment was made, and it was his duty to pay the taxes; that he could not, by neglecting to pay them and permitting the land to be sold in consequence of his neglect to pay, add to or strengthen his title by purchasing at the tax sale himself, or by subsequently buying the tax title from a stranger, who purchased at the tax sale, and thus gain an advantage by his own negligence in failing to pay the taxes. This the law cannot permit, either directly or indirectly, and by permitting the taxes to become delinquent, and the property to be sold for such delinquency, and afterward acquiring the title through a stranger, he thereby would not acquire a new title to said property, notwithstanding the fact that the title was taken in the name of his wife; such a purchase can only be deemed a payment of the taxes; and Whitney's title, even though held in the name of his wife, is the same as though he had each year paid the taxes.

This rule is clearly announced in the case of *Gates v. Lindley,* 104 Cal. 451, 38 Pac. 311, and is recognized by the author of Tax Titles, in 27 Am. & Eng. Ency. of Law, at p. 954, as the general rule to govern such a state of facts, and cases are there collated and cited. The respondent's title, therefore, stands upon the fee simple title of Whitney at the time such assessment was made in 1897, and is the same as though he had each year paid the taxes and such sale had not been made. The second conclusion of law is therefore correct, unless such title is defeated by reason of the assessment and sale for taxes for the years 1900 and 1901, made in July, 1902, and this is determined by whether the court erred in its first conclusion of law, that the sale for taxes for the years 1900 and 1901, made in July, 1902, was void.

The assessment for the year 1900 was canceled by the board of county commissioners, and the county auditor was directed to give the assessor credit for the delinquent taxes, the penalty and interest for the year 1900 on the Whitney

land, and this was done accordingly. This leaves the further question to be determined, whether the assessment made in 1901 was a legal assessment. This assessment, as stipulated by the respective counsel, is a jumbled-up muss, and is so indefinite and uncertain that this court, after long deliberation, is unable to tell just how it was made, but it is evident that an attempt was made to comply with sec. 1681, Rev. Codes, which provides:

"Any property discovered by the assessor to have escaped assessment for the preceding year, if such property is in the ownership or under the control of the same person who owned or controlled it for such preceding year, may be assessed at double its value."

The 1901 assessment-roll shows the following:

"DESCRIPTION OF PROPERTY.

| "Real Estate other than City or Town Lots. | Section. | Township. | | Range. | | Acres. | Value of real estate other than City or town lots. |
|---|---|---|---|---|---|---|---|
| | | North. | South. | East. | West. | | |
| S. ½ of SW. ¼ NE. ¼ of SW. ¼ | 13 | | | | | 120 | 372.00 |
| ~~NW. ¼ of NW. ¼~~        Listed by E. M. Wolfe | 24 | | 1 | 6 | | ~~160~~ | ~~400.00~~ |
| Same property for 1900 | | | | | | | 372.00 ~~400.00~~ |

1100.xx                                   1264.00

"Total value of real estate ~~$800.00~~; total value of all property ~~$1220.00~~; total value of all property after equalization, $1264.00; State and County Tax, $37.92; One Poll Tax; One Road Tax; School Tax, $9.48; Total Tax, $52.40; When assessed, 6th month, 18th day, year 1901.

"Remarks: Escaped Assm't for year 1900, Double Assm't 1901. D."

It is not very clear from this entry in the assessment-roll as to the acreage or valuation of the real property assessed. From the above statement it would seem that the land in secs. 13 and 24, acreage 160, was valued at $400 for the year 1901, and that the same property for 1900 was valued at $400, making a double assessment upon 160 acres at a valuation of $800, and that thereafter the northwest quarter of the northwest quarter of section 24 was stricken from such assessment, and a note made that such land was listed by E. M. Wolfe, and the acreage was reduced to 120 acres, and the valuation changed to $372 for each year; yet, in the memorandum below the above statement, the total valuation of the

real estate is given as $1,100. The reduction of the valuation from $400 to $372 is explained in the briefs of counsel to have been made by reason of the reduction made by the state board of equalization of $28, but the assessment as a whole shows very clearly that 120 acres of the lands owned by the respondent was assessed at that time double, and the valuation placed at $372, for both the years 1900 and 1901, and the same valuation assessed by the assessor on all the Whitney land in sections 13 and 24.

It is also stated that such assessment was made on the 18th day of June, 1901, and that the total tax was $52.40. This total tax is apparently for the years 1900 and 1901. Upon the delinquent list book for that year the following entry appears:

"F. E. Whitney (Taxes 1901) ; S. ½ SW. 4, NE. ¼ SW. ¼, Section 13, Twp. 1 S. of R. 6 E. 120 Acres; $372.00 (Assessed valuation) ; Improvements on same $200.00 (Assessed valuation) ; same property for 1900; Land $372.00 improvements on same $200.00."

The record also shows that the publication for delinquent taxes for 1900 shows the following entry:

"Whitney, F. E., Mountain Home. S. 2 SW. 4, NE. 4 SW. 4 Sec. 13 Twp. 1 S. R. 6 E., 120 Acres, 372, Imp. on same 200; same for 1900; land 372; Imp. on same 200; personal property 120; Prop. Tax 37.92; Pen. 379; Poll and road 6; special school district 4, 9.48; Pen. .95; Adv. 1.25—$58.39."

The total taxes for the years 1900 and 1901 was the sum of $58.39, and it was for the payment of this sum that the property was sold at tax sale on July 21, 1902, and a tax deed was issued in pursuance of such sale dated October 10, 1905, to Elmore county, and on the 13th day of July, 1910, Elmore county made a commissioner's deed to the appellant for the same property, to wit: South half southwest quarter, northeast quarter southwest quarter, section 13, 120 acres.

It will be observed, also, from the assessment-roll of 1901 that the assessor apparently made an assessment of all the land in sections 13 and 24, including 160 acres belonging

to Fred E. Whitney, and fixed the value of such real property at $400, and this assessment was made likewise for the year 1900; and after such assessment was made this assessment appears from the face of the assessment-roll to have been changed, and the acreage in sec. 24 was stricken from such roll, leaving the land assessed to Whitney in section 13, consisting of 120 acres, but the valuation was not changed; and that the valuation was afterward reduced in the sum of $28 by the state board of equalization. This, however, was not made because of any change which the assessor made, but on the theory that the land was assessed too high, and would apply whether it covered 120 acres or 160 acres. It, however, would have nothing to do with the fact that the assessor had fixed the valuation upon 120 acres the same as upon the entire 160 acres. This was an increase in valuation upon the 120 acres on account of 40 acres having been stricken from the assessment-roll; there was no decrease in valuation. This was without any notice to the owner, Whitney.

This increase in valuation, however, was not made by the board of county commissioners acting as a board of equalization, but was made by the assessor. The change was not the result of the board of county commissioners, acting as a board of equalization, making an order, under the authority of Rev. Codes, sec. 1699, that the valuation of the property of Fred E. Whitney, a taxpayer, should be increased, but the change was made, apparently, in an attempt of the assessor, under sec. 1691, Rev. Codes, to make an assessment at a double valuation of the property assessed. This attempt on the part of the assessor to make a double taxation was an enlistment of the property of the respondent and the giving to such property a double value, by reason of the fact that it had escaped taxation for the year previous, and the assessment is made as a whole and includes an unauthorized assessment, which renders the entire assessment void. The entire assessment being void, the respondent was not required to comply with the provisions of sec. 1790 of the Rev. Codes.

Under the record in this case it seems to be apparent that while the assessment made in 1901 was intended to be a double

assessment, and consisted of a separate valuation for the year 1900, and likewise a separate valuation for 1901, still the sale was made for the total taxes as shown in the delinquent tax list, which was the tax upon the real property and improvements for the year 1901, and also upon the land and improvements, and personal property, poll, road and special school district tax for the year 1900, and it is so indefinite and uncertain that it is impossible to separate just how much of this was for the assessment for the year 1901. This being true, not only a part of the taxes involved, but the entire tax, becomes invalid and the sale and deed made in pursuance of such assessment must fall by reason thereof. The judgment of the lower court is *affirmed.* Costs awarded to respondent.

Ailshie and Sullivan, JJ., concur.

Petition for rehearing denied.

(September 28, 1912.)

