GRANITE BUILDING ASSOCIATION *vs.* WILLIAM R. GREENE.

PROVIDENCE—FEBRUARY 14, 1903.

PRESENT: Tillinghast, Rogers, and Douglas, JJ.

(1) *Landlord and Tenant. Ejectment. Evidence.*

Evidence tending to prove that defendant, in an action of ejectment, never had authorized the surety on the statutory bond given by the defendant, on claim of jury trial in the action (who had collected rent accruing from defendant and paid it to plaintiff to protect himself), to make or agree to reservations contained in receipt given by plaintiff for said rent:—

*Held,* properly admitted.

(2) *Landlord and Tenant. Lease. Breach, single or continuing. Waiver.*

Where a condition in a lease is continuous, a waiver only discharges the particular breach.

A. rented a store to B. with covenant against the sale of liquor on the premises. B. sub-let the premises as a liquor saloon. Subsequently A. accepted rent from B., and thereafter brought ejectment:—

*Held,* that the breach of the covenant was continuous, and that acceptance of rent, even with knowledge, was not a waiver of the right to maintain ejectment for a subsequent and continuing breach.

TRESPASS AND EJECTMENT.   Heard on petition of plaintiff for new trial, and petition granted.

TILLINGHAST, J.   This is an action of trespass and eject-ment, and is brought to recover possession of stores Nos. 15 and 16, on Market square, in the city of Providence.

The following facts appeared in evidence at the trial of the case in the Common Pleas Division:  On the first day of April, 1898, the plaintiff leased to George N. Harris and Henry L. Greene the two stores upon the first floor of the granite build-ing, located at the corner of North Main street and Market square, in the city of Providence, numbered 15 and 16 on said Market square, together with the basements or cellar rooms directly beneath said stores, for the term of ten years, at a yearly rental of $4,000, payable in monthly instalments of $333.33, on the first business day of each month, in advance. The lease contained a covenant that is should be terminated at the option of the lessor in case of breach by the lessees of any of their covenants therein contained.  One of the cove-nants of the lessees was that they would not sell liquor upon said premises except in the due course of their business as drug-gists.  The lessees took possession under the lease, and carried on the business of druggists until sometime in January, 1901, when they sold out and assigned their interest in the lease to the defendants, as claimed by the plaintiff, while the defend-ants claim that said sale and assignment was made to the de-fendant William R. Greene individually.

Immediately after the sale said William R. Greene took pos-session of the leased premises and carried on a drug business at No. 16 Market square, paying rent regularly to the treasurer of the plaintiff corporation by his personal check, the receipts for which rent were given to him personally.  About August, 1901, the store No. 15 Market square became vacant, and the defendant William R. Greene requested Frank P. Comstock, who was a director in the plaintiff corporation, to waive the covenant against liquor selling, so that he might sub-let the store as a liquor saloon; but said Comstock refused this request. Said William R. Greene, however, did sub-let store No. 15 to

one Charles N. Denault, to be used for the sale of intoxicating liquors, and the plaintiff contends that said sub-letting was in violation of the covenant of the lessees and entitles it to recover possession of the premises discharged from the lease.

The case now before us was brought in the District Court of the Sixth Judicial Distirct (the writ having been issued on the 2nd day of August, 1902), where, upon trial, the defendant George C. Greene was adjudged to be not in possession of the premises in question, and decision was rendered in his favor for costs.    Decision was rendered for the plaintiff, however, against the defendant William R. Greene, for possession and costs; whereupon the defendant William R. Greene claimed a jury trial, and the case was certified to the Common Pleas Division. The record shows that the plaintiff also claimed a jury trial as against the defendant George C. Greene, who was held not to have been in possession of the premises by the District Court as aforesaid.

At the trial of the case in the Common Pleas Division the presiding justice granted a nonsuit as to the defendant George C. Greene, and allowed the case to go to the jury as to the liability of the defendant William R. Greene.    The jury returned a verdict in favor of the defendant William R. Greene, and the case is now before us upon the plaintiff's petition for a new trial upon the grounds, (1) that the presiding justice erred in nonsuiting the plaintiff as to the defendant George C. Greene; (2) that he erred in admitting certain testimony offered by the defendant; (3) that he erred in his charge to the jury; and (4) that the verdict was against the evidence and the weight thereof.

1.   An examination of the evidence fails to show that the defendant George C. Greene was ever in possession of the premises in question, or that he took any part in sub-letting them to Denault for use as a liquor saloon.    The nonsuit as to him, therefore, was properly granted.

(1)   2.   The second ruling complained of was that the defendants' counsel was permitted to interrogate William R. Greene as to the relations existing between himself and one William H. Shaw, as to certain receipts given to the latter, by plaintiff's

attorney, after the commencement of proceedings to eject the defendants from said premises.

It appears that Shaw was surety on a statutory bond given by William R. Greene on his claim for a jury trial in a prior action brought by the plaintiff against these defendants for the possession of the premises in question (in which action the plaintiff was nonsuited), and also that said Shaw was surety on the statutory bond of William R. Greene on his claim for jury trial in the present action; and that in view of the liability thus incurred by Shaw he took care to protect himself by collecting from the defendant William R. Greene, and paying to the plaintiff, the amount of the rent which accrued during the time that this liability on said bonds continued.

The object of the defendants' counsel in interrogating said William R. Greene in relation to the receipts referred to was to show that the latter had not made or agreed to, and had not authorized his bondsman, Shaw, to make or agree to, the reservations contained in the receipts offered in evidence, which reservations were to the effect that the rent, or money received by the plaintiff from Shaw, for the use and occupation by the defendants of said premises, was received without prejudice to the rights of the plaintiff to eject the defendants for the breach of their covenant aforesaid.

We think the testimony was properly admitted for the purpose of showing, or tending to show, that the defendant William R. Greene was not bound by the acts of his bondsman in the premises.

(2) 3. The third ground upon which the plaintiff moves for a new trial is that the presiding justice erred in charging the jury that they were to determine whether or not the plaintiff, by reason of its having accepted an instalment of rent from the defendants in January, 1902, had waived its right to terminate the lease under which the defendants were tenants of the plaintiff, on account of the breach by the defendants (who were the assignees of the lessees, and hence bound by the terms of the lease) of the covenant not to sell liquor upon the premises.

In charging the jury the court said: "There is practically but a single issue for you to consider. . . . The lease in ques-

tion contains a clause that the selling of intoxicating liquors shall not be carried on there, except in the ordinary course of the druggist's business. It is conceded at the present time that the business of a licensed liquor seller is carried on. That would make a forfeiture of the lease, irrespective of the fact that the rent had been paid, unless there had been some acts on the part of the plaintiff which amount to a waiver of the right to insist upon that forfeiture; and that is the only question for your consideration. And as you find upon this question of the waiver or no waiver will your verdict be either for the plaintiff or defendant. . . . It is for you to decide whether or not there has been a waiver of the right to insist upon a forfeiture; and, so far as rent is concerned, you will go no further than the first day of February, and for this reason: Since February it is testified that rent has been paid under this agreement—that the rights of the parties should be preserved as they were on the first day of February. So, taking rent since the first day of February is not to be construed as binding one side or the other.

" When you come to consider the evidence, if you are of the opinion that the corporation had notice in December when this man went in there, and waived its right to insist upon the forfeiture contained in the lease, then, if that right was waived, it is still waived. If they did not waive it then, they have not waived it since for the purposes of this case, and you will proceed to give your verdict accordingly. The question of rent is not to be considered by you since the first day of February, because that was paid under an agreement which protects the rights of the parties as they were on the first day of February."

The plaintiff's counsel took an exception to that part of the charge which was to the effect that the jury were to determine whether the acceptance of rent in January, 1902, was a waiver of the plaintiff's right to insist upon a forfeiture of the lease. That is to say: As we understand it, the exception was to the instruction that it was competent for the jury to find that if the plaintiff accepted the rent for January, 1902, after knowledge on its part of the violation by defendants of the covenant aforesaid, it had waived its right to insist on the forfeiture of

the covenant in the lease, the court saying "that if the right was then waived, it is still waived."

In view of the facts which appeared in evidence relative to the continued violation by the defendants of the covenant in question, we are of the opinion that the rule as thus laid down by the court was too narrow. For, while it is doubtless true that as a general rule a waiver of a forfeiture occurs by an acceptance of rent which became due after a breach of covenant by the lessee, which breach was known to the lessor at the time of accepting the rent (Taylor's Land & Ten., vol. 2, 8th ed. § 497; *McGlynn* v. *Moore*, 25 Cal. 384), it is also true that there are well-known exceptions to such rule. And one of these exceptions is where there is a continuing cause of forfeiture. In such case the lessor is not precluded from taking advantage of the forfeiture by having received rent which accrued after the breach was originally committed.

An example of a case of this sort which bears directly on the case at bar is that given by Mr. Taylor, *supra,* section 500, where the forfeiture was incurred by using two rooms in a house in a manner prohibited by the lease. The user under such circumstances in the case relied on by the author in support of the text was held to be a continuing breach, and the landlord was allowed to recover after receiving rent, provided the user continued after such receipt. Thus, in *Doe* v. *Gladwin*, 6 Q. B. 953, it was held that where a tenant, who is bound to keep the premises insured at all times during the demise, leaves them uninsured for a time, the receipt of rent is only a waiver of that portion of the breach which has occurred at the time the rent is received. See also *Block* v. *Ebner*, 54 Ind. 544; *Farwell* v. *Easton*, 63 Mo. 446; *Doe* v. *Woodbridge*, 9 B. & C. 376.

In *Manice* v. *Millen*, 26 Barb. 41, Mitchell, P. J., in delivering the opinion of the court, said: "The acceptance of rent is generally a waiver of a previous cause of forfeiture, if that cause were known to the landlord. But this rule does not apply to cases of 'a continuing breach.' (Arch. Land. & Ten. pp. 98–101.) So where there was a covenant that rooms should not be used for certain purposes and they were so used, and

afterwards the landlord accepted rent, and the tenant continued, after that, to use them for the same forbidden purposes, ejectment could not be brought for the misuser prior to the payment of rent, but was sustained for the subsequent continuance of the same misuser."

In Am. & Eng. Ency. of L., 2nd ed. vol. 18, p. 388, under the caption "*Continuing Causes of Forfeiture,*" the law is stated as follows: "Some covenants and conditions are susceptible of a continuing breach. In such case a waiver of a breach extends only to past breaches, and will not preclude the lessor from taking advantage of a forfeiture incurred subsequently to such waiver. Thus, a covenant to keep in repair, to keep the premises insured, to plant and keep replaced fruit trees upon the demised premises and to pay taxes, *as well as restrictions upon the use of the premises,* have been held to be continuing, so that a waiver of one breach would not preclude a forfeiture for a subsequent breach." See cases cited in support of these propositions.

In short, the rule seems to be well settled that, where a condition in a lease is single, it is wholly discharged by one waiver. See *Smith* v. *Edgewood Club,* 19 R. I. 628. But if it be continuous, the waiver only discharges the particular breach.

Under the law as above stated, it is clear that the breach of the covenant in question by the lessees was a continuing one, and that the acceptance of rent by the plaintiff for the month of January, 1902, even if it had knowledge of the breach at that time, was not a waiver of its right to maintain its present action for a subsequent and continuing breach of said covenant.

As a new trial must be granted on account of the error above referred to, there is no occasion for us to consider the fourth and last ground for a new trial, namely, that the verdict is against the evidence.

Several other questions have been quite fully and learnedly discussed by counsel, both at the hearing and in their briefs; but as they are not involved in the case as presented by the record, anything which we might say relating thereto would be mere *dictum,* and hence we refrain from discussing them

at the present time. The plaintiff's petition for a new trial upon the grounds therein set forth raises all the questions which we can now properly decide.

Plaintiff's petition for new trial granted.

*William A. Morgan*, for plaintiff.

*Irving Champlin*, for defendant.