## INVESTORS' GUARANTY CORP. vs. THOMSON
(No. 1114, April 29th, 1924; 225 Pac. 590.)

LANDLORD AND TENANT—COVENANT AGAINST ASSIGNMENT OF LEASE—
TRANSFEREE OF REVERSION MAY ENFORCE—INDIANS—INDIAN LANDS
—CONTRACTS—COVENANTS AND CONDITIONS DISTINGUISHED—FOR-
FEITURES—COURTS—LICENSE TO ASSIGN LEASE—WAIVER.

1. The common law of England, subject to the qualifications specified by Comp. Stats. 1920, Section 4547 is the rule of decision in this State.

2. The common law rule prohibiting the transfer of the right to re-enter for breach of a condition was changed by St. 32 Henry VIII c 35 with respect to conditions in leases for life or for years, so as to allow the grantee of the reversion to avail himself of the condition, at least as to a breach thereof, subsequent to the transfer, and is accordingly the rule in this State.

3. A lease made to the lessee ''and his assigns'' with a covenant and condition not to assign, are not repugnant, the word ''assigns'' in the granting clause applying only to lawful assigns pursuant to license or by operation of law.

4. Consent of Interior Department to assignment of lease from heirs of Indian, after purchase of land from government, *held* not express license destroying condition against assignment without license, though application for approval of assignment was filed before such purchase; rule that landlord, after selling land, cannot do anything to prejudice owner's rights, being applicable to federal government as landlord or landlord's guardian.

5. Conditions being construed strictly, condition in lease, if single, is wholly discharged by one waiver.

6. A simple covenant not to assign without license, as distinguished from a condition giving right of re-entry, binds assignee, at least where it purports to bind both lessee and his assigns.

7. Where a cause of forfeiture is not single, but continuous, waiver of one breach, as of a condition against subletting, does not destroy the condition and is not a waiver of other breaches.

8. Condition against assignment by lessee and his assigns with license is continuous, and waiver of one breach does not destroy condition nor waive subsequent breaches.

9. The Supreme Court is not obliged to aid in perpetuating an erroneous rule once a part of the common law of England, but so modified by subsequent judicial decisions as not to be a rule of decision in this State, within Comp. Stats. 1920, Section 4547.

ERROR to District Court, Fremont County; CYRUS O. BROWN, Judge.

Action by Eugene Thomson against the Investors' Guaranty Corporation for the cancellation of a lease for breach of covenant and condition prohibiting an assignment there-

of. There was a judgment for plaintiff and defendant brings error. See also 31 Wyo. 260, 225 Pac. 596.

*Bryant S. Cromer* and *E. H. Fourt* for plaintiff in error.

The lease covered Indian lands and was not forfeitable without the approval of the Secretary of the Interior; the reversionary clause is in legal effect a "possibility of re verter", Wagner v. County, 76 Ore. 453, 148 Pac. 1140; 23 R. C. L. 103; grantors or lessors waived rights under this clause; lessee mortgaged the leasehold for improvement funds, mortgage was foreclosed and Moorehead became the purchaser; the Indians approved the action of the court and requested ratification by the Department which was granted; grantors waived right of re-entry long prior to plaintiff's purchase; grantor thus waived right of re-entry against grantee; re-entry was a personal privilege existing in favor of grantors or their heirs, Wagner v. County supra; Statute of 32 Henry VIII c. 35 modifying the com·mon law rule applies, Sheets v. Selden, 2 Wall 177, 17 L. ed. 822; acceptance of land after assignment is a waiver, Murray v. Harway, 55 N. Y. 337; Randal v. Tatum, 33 Pac. 433; Chipman v. Emeric, 5 Cal. 49; Dakin v. Seward, 17 Wend. 447, citing Dumpor's case from Coke 119; Bank v. Gollman, 102 Pac. 932; Chilson v. Cavangh, 160 Pac. 601; Jones v. Moncrief Co., 108 Pac. 403; Holman v. Co., 47 Pac. 708; Blessing v. Fetters, 181 Pac. 108; Co. v. Robertson, 131 Pac. 327; D'Ambrosio v. Nardome, 129 Pac. 1092; breach of condition against assignment without consent renders lease voidable, but if consent of lessor is subse·quently obtained title passes to assignee, Garcia v. Gunn, 51 Pac. 684; covenant against assignment will not prevent sub-letting, nor will a covenant against sub-letting preclude an assignment of the whole interest, Tiffany L. & T. 921-922; Burnes v. Dufresne, 121 Pac. 46; West v. Backus, 189 Pac. 645; Andrews v. Campbell, 135 Ga. 336, 69 S. E. 548; plaintiff had notice of the assignment and is estopped, Acer v. Wescott, 46 N. Y. 384; recognition of the lease by Sec-

retary of the Interior binds plaintiff, Graff v. Castleman, 5 Rand. 195; a purchaser is bound by recitals in instruments through which he deraigns title, Childs v. Clark, 49 Am. D. 164; Garner v. Byard, 23 Ga. 289; a lease may be terminated by agreement without relieving lessee from liability for its breach, Marshall v. Rugg supra; Frank v. Handcock, 13 Wyo. 37; a guarantor of rent for premises occupied by a saloon held liable after cancellation of tenant's license, Hecht v. Co., 19 Wyo. 10, 113 Pac. 788, 117 Pac. 132.

*O. N. Gibson* for defendant in error.

The mortgaging of an Indian agricultural lease without lessor's consent or departmental approval is a breach of covenant against assignment, Reese v. Sheets, 82 Pac. 487, 24 Cyc. 973; consent of one joint lessor to assignment is insufficient to warrant approval, 35 Cyc. 104; consent of Indian lessors without departmental approval does not constitute a waiver or estoppel, O'Brien v. Bugbee, (Kan.) 26 Pac. 428; Miller v. Fryer, (Okla.) 128 Pac. 713; Guffey v. Guffey, (Okla.) 175 Pac. 816; Carr v. U. S., 98 U. S. 433; Power Co. v. U. S. 240 U. S. 389; Causay v. U. S., 240 U. S. 399; having failed to approve assignment before patent, Secretary of the Interior was without power to grant approval after patent, Coleman v. Feder, 100 S. E. 400; Carpenter v. Co., (Mass.) 61 N. E. 816; one cannot be deprived of substantial right without notice, Bush v. Caldwell, 6 Wyo. 342; Dallas v. Bank, 7 Wyo. 66; proof of loss or destruction of an instrument, its contents, proper execution and genuineness are required as a basis for secondary evidence, 22 C. J. 1044-1052; consent of the owner of the reversion must be obtained to each successive assignment where a covenant against assignment exists, 24 Cyc. 963; 16 R. C. L. 839; in England it was established by an early case that an express license to assign extinguished the condition against assignment without consent, Dumpor's case 4 Coke 119; this rule has been subjected to severe criticism over a long period, Brummel v. McPherson, 14 Ves Jr. 173;

Doe v. Bliss, 4 Taunt 736; William's Real Property 4th
ed. 262; 1st Smith's L. C. 11th ed. 32; 1 Tiffany L. & T.
944; the rule was abolished by statute in England, 22 and
23 Vic. c. 35; 23 and 24 Vic. c. 28; it was early held in
England that the rule should be restricted to express li-
cense, as distinguished from implied waiver, Doe v. Bliss,
supra; Doe v. Pritchard, 5 B. & A. 765; Farr v. Kenyon,
34 Atl. 241; Seaver v. Coburn, 64 Mass. 324; as thus re-
stricted the rule is inapplicable to the case at bar; a lease
providing for readjustment for rentals, but lacking in
means for carrying it out will receive adjustment by courts
of equity, Stose v. Heissler, 120 Ill. 432; Tobey Co. v.
Rowe, 18 Ill. App. 293; Kelso v. Kelley, (N. Y.) 1 Daly 419;
Stromiaher v. Seppenfeld, 3 Mo. 429; Springer v. Borden,
154 Ill. 668; Ressler v. Stose, 131 Ill. 393; Viani v. Fer-
ren, 54 Barb. 529; Cole v. Peck, 96 Ind. 333; Durham v.
Bradford, L. R. 5 Ch. App. 518; Lowe v. Brown, 22 O. S.
463; Phippen v. Stickney, 3 Metc. 384; Hood v. Aarchor,
160 Mass. 120; if failure to readjust is not fault of lessor,
lessee is liable for reasonable value of the premises, 24 Cyc.
1169; of the assignments essential to establish plaintiff's
title, the existence of but one was established; the lease
was within the statute of frauds, 4719 C. S., 27 C. J. 214;
the original instrument was not admissable without proof
of execution, 22 C. J. 1044-1056; consent to first assignment
was not shown; consent of one tenant in common is insuf
ficient without subsequent ratification, 36 Cyc. 104; sale
of premises with reference to existing lease should be re-
garded as a declaration of forfeiture, Frank v. Handcock,
13 Wyo. 37; the Indian department was without power to
ratify after patent; nor deprive a party of substantial
rights without notice, Bush v. Caldwell, supra; Dallas v.
Bank, supra, a covenant against assignment is construed
as a personal one, unless the contrary clearly appears; but
where made to lessor, his executors, administrators and as-
signs it binds successive assigns, and the consent of the re-
versioner is essential to each successive assignment, 24 Cyc

963, 16 R. C. L. 839; the breach of covenant for readjustment of rentals was uncontroverted and alone sufficient to support a forfeiture.

Blume, Justice.

This is an action brought by Eugene T. Thomson, as plaintiff, present owner of the reversion, against Investors Guaranty Corporation, to cancel a lease for violation of the covenant and condition prohibiting assignment thereof. The lease is for the south east quarter of the north east quarter, and the north east quarter of the south east quarter of section 14, T. 1 S. R. 3 east of Wind River Meridian, in Fremont County. It is dated October 14, 1908, and runs for 20 years. It is made by the heirs of Flies on Top, an Indian, with the approval of the Department of the Interior of the United States, to the Arapahoe Trading Company, lessee and party of the second part, and its executors, administrators and assigns. The lease contains a covenant against assignment and a provision for re-entry in case of violation. The covenants and conditions of the lease are made binding upon the lessee, his executors, administrators and assigns. On December 16th, 1912, said lessee the Arapahoe Trading Company mortgaged said leasehold interest to G. P. Moorhead. This mortgage was foreclosed in the district court of Fremont County. An order of sale was issued out of said court, pursuant to which the leasehold interest was sold to said G. P. Moorhead and a sheriff's deed was issued to him on December 29, 1916. Moorhead transferred his interest to L. C. Nelson on October 19, 1917. Nelson transferred his interest to William Wilk on January 25, 1918, and the latter in turn transferred his interest to Investors Guaranty Company, defendant herein, sometime during 1919, before the commencement of this action. No consent to any of these transfers, on the part of the lessors, was obtained before the sale of the land to the plaintiff. Two out of the three Indian lessors had given their consent to the transfer to Moorhead, but they were incompetent and their consent gave no validity to the assignment. An application was

made to the Secretary of the Interior some time during 1917 to obtain his consent also. This application was not acted on until November 9, 1920, at which time it was approved. In the meantime and on May 23, 1918, the plaintiff duly bought the land in question from the Government of the United States. The sale was not made subject to the lease, but plaintiff had knowledge of the existence thereof, although not of the fact that any assignment thereof had been made. The above mentioned proceedings before the Secretary of the Interior were had without knowledge of, or notice to, the plaintiff. Some time during the fall of 1918, plaintiff learned that William Wilk held the lease and he entered into negotiations with him as to the adjustment of the rental under the lease pursuant to the terms thereof. Wilk, however, refused to make any adjustment, and, presumably, soon thereafter, without plaintiff's knowledge or consent, transferred his interest, as before stated, to the defendant corporation, against which this action was commenced on September 6, 1919, and the question is whether the judgment of the lower court in cancelling the lease, for violation of the covenant and condition against assignment, is right. The parties will be referred to herein as in the court below.

1.   It is contended by counsel for defendant that the plaintiff is not a party that can complain of any assignments of the lease; that the grant of the reversion to plaintiff is a waiver by the grantor of the condition in the lease; that the right of re-entry is a personal privilege and cannot be exercised by the grantee of the reversion. We are cited to Wagner v. Wallowa County, 76 Or. 453, 148 Pac. 1140, L. R. A. 1916F 303, but that case does not involve a lease. The common law rule prohibiting the transfer of the right to re-enter for breach of a condition was changed by St. 32 Henry VIII, c. 35, as regards conditions in leases for life or years, so as to allow the grantee of the reversion to avail himself of the condition. Tiffany, Real Property, Sec. 86 (c) ; Tiffany, L. & T., Sec. 149. This statute became a part

of the law of this state by section 4547, Wyo. C. S. 1920,
which provides among other things that:

"The common law of England, as modified by judicial
decisions, so far as the same is of a general nature and not
inapplicable, and all declaratory or remedial acts or stat-
utes made in aid of, or to supply the defects of the common
law prior to the fourth year of James the First   *   *   *
shall be the rule of decision in this state" etc.

And it is said by Tiffany, supra, that the right of the
transferee of the reversion to enforce a forfeiture in a lease
has not been denied in any state, and there seems to be no
doubt, in view of the statute of Henry VIII, above referred
to, that the transferee stands in the shoes of the transferor
and may enforce the covenant as well as the condition
against the assignment, at least as to a breach thereof sub-
sequent to the transfer. Tiffany, L. & T., Sec. 152 (i), Sec.
149 G, p. 885; Bailey v. Allen E. Walker Co., (App. D. C.)
290 Fed. 282; The fact that a lease is made to the lessee
"and his assigns," does not alter that fact. Such provision
and a covenant and condition not to assign are not repug-
nant, for the word "assigns" in the granting clause of the
lease applies only to such assigns as there may lawfully be
by license or by operation of law. Tiffany, L. & T. Sec.
152 (i). We are cited to Chilson v. Cavanagh, 61 Ok. 98,
160 Pac. 601; L. R. A. 1918D 1044; Jones v. Moncrief-
Cook Co., 25 Okl. 856, 108 Pac. 403 and other cases holding
that the transferee could not take advantage of any breach
that took place before the transfer to him of the reversion.
In these cases the transferee had waived the breach. It may
be a question whether the grantee of a reversion has the right
to take advantage of any breach of a condition previous to
the transfer. Tiffany, Real Property, Sec. 86, states that
the statute of 32 Henry VIII does not enable a transferee
of the reversion to enforce a forfeiture for breach of con-
dition, if the breach occurred before the making of the
transfer. See also Tiffany, L. & T. Sec. 149 (9). But see

Smith v. Lewis, 20 Pa. Dist. 459. The point is of compara-
tive unimportance here, for the reason that the plaintiff also
relies upon the violation of the lease by reason of the assign-
ment made by Wilk to the defendant after the foregoing
transfer. This assignment was made without the knowl-
edge or consent of plaintiff and was of itself a sufficient
breach of the condition against assignment to give plaintiff
the right to cancel the lease, unless that condition was de-
stroyed, as claimed by defendant, by reason of consent to
a previous assignment, or a waiver of a previous breach.
This is, in fact, what defendant contends. His counsel ar-
gues that a condition is unapportionable, indivisibile, entire
and single; that at least the assignment to Moorhead, made
previous to the time that plaintiff became owner of the land,
was licensed or the breach in connection therewith was
waived, and that this license or waiver destroyed the whole
condition, according to the rule in Dumpor's case, herein-
after discussed, leaving subsequent assignees the right to
assign at will. The claim that there was a license to assign
rests upon the consent to the assignment to Moorhead given
by the secretary of the Interior on November 9, 1920. But
this was two and one half years after plaintiff became the
owner of the land. True, an application to have that assign-
ment approved had been filed in 1917. If a lease is violated,
and an application is made to the landlord to consent to
such violation, but before the latter acts on such application
he sells the land and parts with all interest therein and in
the lease, he cannot do anything thereafter in connection
with the lease that will prejudice the rights of the owner of
the land. Goldman v. Daniel-Feder Co., 84 W. Va. 600, 100
S. E. 400, 7 A. L. R. 246; Bailey v. Allen E. Walker & Co.,
(App. D. C.) 290 Fed. 282; Tiffany, L. & T. Sec. 149 (12).
This would seem to be elementary. The Interior Depart-
ment was, in the case at bar, the landlord or the landlord's
guardian, and there is no reason why the rule above men-
tioned should not apply to the United States Government
the same as to any other landlord or landlord's guardian.

No express license for the assignment to Moorhead accordingly appears. The claim that the right of forfeiture was waived is based on the testimony of plaintiff. The latter had talks with Wilk, trying to get the amount of rental adjusted. He also wrote a letter, stating that he was perfectly willing that Wilk should continue to hold the lease, if they could agree on the amount of the rental. His negotiations were directed to the sole end of getting the rental adjusted, without raising any objection whatever to previous assignments. Forfeitures are not favored, and it is said that slight evidence of the lessor's intention to relinquish his right is sufficient to warrant the finding of waiver. Without definitely deciding the point, we are inclined to the opinion, that the evidence in the record indicates that the plaintiff recognized the validity of assignments previous to the last and waived the right to forfeit the lease on account thereof. See cases collected in Note 24 L. R. A. N. S. 1063-1065. Several authors of text-books take the view that a waiver is not equivalent to a license and that hence such waiver does not defeat the whole condition of a lease within the meaning of Dumpor's case. 1 Washburn, Real Property, Sec. 650, citing Burton, Real. Prop. Sec. 853; Tiffany, Real Property, Sec. 83, pp. 299, 300. This view has been condemned as illogical and unsound, holding that a waiver is of the same force and effect as a license. 7 Am. Law. Rev. 633, 638; 9 Columbia Law Review 628; German-Am. Sav. Bank v. Gollmer, 155 Cal. 683, 102 Pac. 932; 24 L. R. A. (N. S.) 1066; Murray v. Harway, 56 N. Y. 337. Hence we are driven to the dilemma of considering, on principle, either this rule or the rule in Dumpor's case, or both. The case may be disposed of by considering the rule in the case last mentioned, for if that rule is not sound, the action of the lower court must be affirmed. The question is new in this jurisdiction and we are left free and untrammeled to consider it upon principles recognized as sound by all of the courts,

2. Dumpor's case has had a remarkable career in juridic literature. An examination of that literature having-

a direct and indirect bearing on that case shows both the wonderful stability of the law as well as the extraordinary pertinacity of its errors. The case referred to was decided about 1603 and is found reported in 4 Coke 119, Smith's Leading Cases (8th Ed.) 95, and in 78 Engl. Rep. 1042. The President and scholars of the College of Corpus Christi, in Oxford, made to one Bolde a lease for years which contained a proviso that the lessee *or his assigns* should not alienate the premises to anyone without the special license of lessors. Subsequently the lessors licensed the lessee to alien or demise the land or any part of it to any persons whatever, and pursuant to such authority the lease was assigned to one Tubbe. It was held that the condition was entire, could not be apportioned by the act of the parties, and that the license given and the assignment made pursuant thereto destroyed the whole condition, leaving Tubbe and any subsequent assignee full liberty to assign the lease to whomever they pleased. It will be noted that the prohibition against assignment extended to the assigns of the lessee, and, giving effect to the intention of the parties, as in ordinary cases, would have prohibited any assign from assigning the lease without the consent of the lessor except for the doctrine announced in that case that a condition is entire and unapportionable. The authorities relied upon in that case are Winter's Case, Dyer 308, 73 Eng. Rep. 697 (1572) ; Leedes & Crompton's Case, 1 Rolle Abr. 472, Godbolt 93, 78 Eng. Rep. 57 ; 4 Leon 58, 74 Eng. Rep. 728 (1587), and Anon. Dyer. 152, 73 Eng. Rep. 331 (about 1558). In Winter's case a lease was made of three manors with a condition that in case of default in the rent, re-entry might be made into "all of said manors." The lessor subsequently transferred two of the manors to one person, part of the third manor to another and part of it to still another. The rent for one of the manors became in arrears, and the owner of the reversion thereof re-entered. The question was as to whether he could do so, and it was held that he could not; that the condition was entire and could not be appor-

tioned.  Whatever we think of the rule generally, construing the condition in that case strictly and literally the holding was perhaps correct, for the condition was that the lessor upon default might re-enter upon "all of said manors," which, upon sale of the land in several parcels, neither he nor either of the three owners of the several parcels had a right to do.  Hence that case was not good authority for Dumpor's case.  The Leeds & Crompton case, supra, has come down to us in an unsatisfactory condition.  A lease was made to A, B and C upon condition that neither of the lessees should alien without license.  Subsequently the lessor gave a license that A, B or C might alien.  In the case as reported in Godbolt 93, 78 Eng. Rep. 57, it was held that the license was good, and that thereby a several authority was granted to each of the lessees to alien.  That holding in no way supports Dumpor's case, since it is based upon the construction of the extent of the license.  The case as reported in 4 Leonard 58, 74 Eng. Rep. 728, appears, however, in a different light.  It is there said:

"It was conceived by some that this license was not of any force to dispense with the condition, because it is uncertain and doubtful in the disjunctive * * * * but all the court was to the contrary * * * * the intent of Lord Stafford (Lessor) was, that one of them might alien, but not all of them, and afterward judgment was given for the plaintiff" (one of the assignees).

The holding here appears to be based on the theory that license to one destroys the condition as a whole.  As so construed the case is contrary to a case in Dyer 334, 73 Eng. Rep. 756, decided about 1574.  In that case a lease contained a condition that the lessee should not assign the premises, or any part of them, without the consent of the lessor.  A part was assigned with consent.  Thereafter the remaining part was assigned without consent, and the landlord re-entered.  The question was, whether he could do so, or whether the whole condition had been destroyed by the

foregoing consent. It was adjudged that the re-entry was lawful, "notwithstanding the dispensation of part of the proviso." This case was referred to in Dumpor's Case and thought to have been wrongly reported, of which, however, we have no trace. The third case, in Dyer 152, relied on in Dumpor's Case, is no authority for the latter. The lease contained the usual clause that neither the lessee nor his assigns could assign without consent, except to the wife or one of the children. The lessee died and his executors assigned to one of the sons. "Quaere whether he may grant this over to a stranger without license. And Brooke, Browne and Dyer thought that he could not; but by Stamforde and Catlin he may." Thus a majority of the court held against the view maintained in Dumpor's Case.

We have investigated the cases upon which Dumpor's case rests as authority, for the purpose of showing that its foundations are not altogether solid. Particularly is this true in view of the fact that it holds that a condition cannot be apportioned by act of the parties, although it may be apportioned by act of law. It is hard to understand why a condition is apportionable in the latter case any more than in the former. Dumpor's Case was apparently approved in the case of Whitchcocke v. Fox, 2 Bullstrade 290, 80 Eng. Rep. 1129, decided about 1614. But from that time to 1807 it finds no support in judicial decisions. (7 Am. L. Rev. 626). In that year the case was affirmed in Brummel v. MacPherson, 14 Ves. Jr. 173, Lord Eldon, however, remarking:

"Though Dumpor's Case always struck me as extraordinary, it is the law of the land at this day. When a man demises to A, his executors, administrators or assigns, with an agreement, that if he, his executors, administrators or assigns, assign without license, the lessor shall be at liberty to re-enter, it would have been perfectly reasonable originally to say, a license granted was not a dispensation with the condition; the assignee being by the very terms of the original contract restrained as much as the original lessee."

It is somewhat surprising that the main reason given by
Lord Eldon for upholding the rule in Dumpor's Case, not-
withstanding his foregoing reasoning, is the case in Dyer
152, supra, which, as we have seen, does not support the rule
at all, and it would almost seem, either that that case has
not come down to us correctly, which, on account of the re-
ported language seems unlikely, or that Lord Eldon did not
take the trouble of examining the case.   So Brummel v.
MacPherson cannot be taken as strong authority, since in
any event it condemns the very reason upon which Dum-
por's case is based.   That reasoning was again condemned
by the same Justice in 1813 in the case of Macher v. Found-
ling Hospital, 1 Ves. & B. 188.   In 1812 C. J. Mansfield, in
the case of Doe v. Bliss, 4 Taunt. 735, 128 Eng. Rep. 519,
said:

"Certainly the profession have always wondered at Dum-
por's case, but it has been law so many centuries, that we
cannot now reverse it.   It does not, however, embrace the
present case."

Other English cases directly or indirectly dealing with
the rule under consideration are Lloyd v. Crispe, 5 Taunt.
249; Mason v. Corder, 7 Taunt. 9; Doe v. Smith, 5 Taunt.
795, all of which are referred to in the article in 7 Am. Law,
R. 616 et seq.   In none of these was the rule applied, and
whatever authority it retained was finally nullified by
Statute 22 & 23 Vic. C. 35 and 23 & 24 Vic. c. 38.

While courts in the United States have frequently said
that Dumpor's Case is law, we have been unable to find a
single case prior to December, 1923 that can fairly be said
to have applied the rule of that case, unless it be Pennock
v. Lyons, 118 Mass. 92.   It is not altogether clear in that
case whether the prohibition against assignment extended
to assignees of the lease, though apparently it did, but the
rule mentioned came up rather indirectly and we should not
have regarded the case of importance were it not for the
decision by that court in December, 1923, in the case of

Aste v. Putnam's Hotel Co. (Mass.) 141 N. E. 666, where the rule was applied, although, as the court said, "the rule in its origin rested upon quite technical reasoning concerning the nonapportionability of conditions." A review of most of the cases decided in the United States that have ref erence to Dumpor's Case is found in a note to 11 L. R. A. 398 and in 7 Am. Law, Rev. 634-639. Aside from some of them which seem to have no particular bearing on the rule in question or are too indefinite, in their statement of the character of the lease involved, for us to pass judgment on them, they may be divided into three classes. First, those where the covenant or condition was actually single, either as to person or purpose. This includes, as we read the cases: Chipman v. Emeric, 5 Cal. 49, 63 A. D. 80 (see 3 Cal. 277); Daugherty v. Mathews, 35 Mo. 520; 88 Am. Dec. 126; Murray v. Harway, 56 N. Y. 337; Lynde v. Hough, 27 Barb. (N. Y.) 415; Reid v. John F. Wiesner Brewing Co., 88 Md. 234, 40 Atl. 877; Sharon Iron Co. v. City of Erie, 41 Pa. 351; Easly Coal Co. v. Brush Creek Coal Co., 91 W. Va. 291, 112 S. E. 512. In all but one of these cases only the lessee himself was forbidden to assign, and the assignees were not. In the other case (41 Pa. 351) the object, the purpose, of the condition was single. There is, of course, no doubt that many conditions are single, as they were in the cases just cited. In such case the view that a waiver of the condition—since conditions are construed strictly—necessarily destroys the whole is probably correct. As was said in Granite Bldg. Ass'n. v. Greene, 25 R. I. 48; 54 Atl. 792; "the rule seems to be well settled that, where a condition in a lease is single, it is wholly discharged by one waiver." We have no fault to find with that general rule, but to cite Dumpor's Case as sustaining it, is at least misleading. True, that case necessarily includes that rule, and it may be that it has so often been cited because of that fact. (See Hartford Deposit Co. v. Rosenthal, 192 Ill. App. 211). But that is not the gist of that case. The vital point of that case, the vice of it, is, that it holds that a condition in a lease is single,

notwithstanding the fact that it is made binding not only upon the lessee but also upon his assigns, and that hence, one license destroys the whole condition. The truth of what we have said seems, in part, to be illustrated in the late case of Easly Coal Co. v. Brush Creek Coal Co., supra, one of the latest, as well as one of the strongest cases apparently maintaining that Dumpor's case is law. The court clearly appears to repudiate the gist of Dumpor's Case, when it said:

"A covenant by a lessee for himself and his assigns, not to assign without consent, runs with the land, and is binding upon the successive assigns. Taking the lease, they take upon themselves the covenant, and it seems that in such case one assent by the lessor does not exhaust his right under the covenant or condition; wherefore subsequent assign ments are invalid if not assented to by him."

The second class of cases referred to above are those which, while recognizing the rule in Dumpor's Case, each find it not to apply to the case in hand. These are mostly cases involving subletting or some other covenant or condition, held to be continuing in its nature. Some of these have other distinguishing features also. Among these cases are: Bleeker v. Smith, 13 Wend. (N. Y.) 530; Dakin v. Williams, 17 Wend. (N. Y.) 447; Williams v. Dakin, 22 Wend. (N. Y.) 201; Garnett v. Albree, 103 Mass. 376; Wertheimer v. Hosmer, 83 Mich. 56, 47 N. W. 47; German Am. Sav. Bank. v. Gollmer, 155 Cal. 683, 102 Pac. 932; 24 L. R. A. (N. S.) 1066; Fisher v. Ginsburg, 191 App. Div. 418, 181 N. Y. S. 516. The third class of cases referred to above are those which virtually repudiate or seem to repu- diate Dumpor's case altogether. These are North Chicago etc. R. Co. v. LeGrand Co., 95 Ill. App. 435; Kew v. Train- er, 150 Ill. 150; 37 N. E. 223; Moss v. Chappell, 126 Ga. 196, 54 S. E. 968, 11 L. R. A. (N. S.) 398; Rachrock v. Sanborn, 178 Cal. 693, 174 Pac. 314; Jackson v. Groat, 7

Cow. (N. Y.) 285. In the first of these cases the court said as to Dumpor's Case:

"A decision regarded by the English bench and bar so unreasonable as to warrant resort to legislation to eliminate it from the body of English laws will hardly be followed in this State."

In Moss v. Chappell, supra, the court said:

"The decision in Dumpor's case, having been rendered prior to the date fixed by our adopting statute, is binding upon this court as authority until overruled. The doctrine in that case that a condition is not divisible seems to us to be purely artificial, and not founded upon sound reason. Forfeitures are not favored, and the courts will often seize upon slight circumstances to prevent the operation of a forfeiture. But there seems to be no good reason why one should not be permitted to release or waive a forfeiture as to one person and assert it to another. We think it more consistent with reason and justice that the rule should be that a forfeiture is only waived in behalf of the person for whose benefit the waiver was made."

In Rathrock v. Sanborn, supra, the court enforced against an assignee a provision of the lease providing that assignment thereof could, in each case, be made only with the consent of the lessors; in other words, the court applied in that case the ordinary rule that the plain provisions of the lease must govern; and hence, the court seems to have ignored the rule in Dumpor's case that a condition, though made applicable to an assignee in plain words, is, nevertheless, indivisible and unapportionable. The consent given in that case specially forbid further assignments, but that fact seems not to have influenced the court in its ruling on the point in question.

But we need not rest with this. Lip-service alone does not keep the rule of a case a living, vital factor in the law

of the land.  A case may be overruled by refusal to apply
it as well as directly.  Certain, definite rules of law have
been formulated and have become strongly entrenched,
since the decision in Dumpor's case, which are squarely
opposed to the rule laid down in that case.  It has, in the
first place, long been settled that a simple covenant, as
distinguished from a condition, not to assign without li-
cense, binds an assignee at least where the covenant pur-
ports to bind both the lessee and his assigns.   Note, 2,
Brit. Rul. Cas. p. 806; Tiffany, L. & T. Sec. 152 (i) ; 24 Cyc.
963, 964; 16 R. C. L. 839; 18 Am. & Eng. Ency. of Law
(2nd Ed.) 663; Springer v. Chicago Real Estate Loan Co.,
202 Ill. 17, 66 N. E. 850.  The effect of a mere covenant,
agreement, not to assign, without the right of re-entry, so
as to make it a condition, is of course different from a
condition.  So, also, the scope of a covenant might, per-
haps, in some cases be construed more liberally than a
condition.  It would seem, though, that in so far as the
question of divisibility or indivisibility is concerned it
stands upon the same footing.  In view, however, of the
possibly different canon of construction in the one case
from that in the other, we do not express any definite opin-
ion on that subject.  But the rules next mentioned are, we
think, decisive herein.  It is well settled that a waiver of
a condition as to one subletting does not discharge the
condition.  Doe v. Bliss, 4 Taunt. 735; Farr v. Kenyon,
20 R. I. 376, 39 Atl. 241; Seaver v. Coburn, 10 Cush.
(Mass.) 324; Goodwin v. Grosse 56 Cal. App. 615, 206 Pac.
138; McKildoe v. Darracot, 13 Gratt. 278; Ireland v. Nich-
ols, 46 N. Y. 413; Miller v. Newton-Humphreville Co. (N.
J.) 116 Atl. 325; Taylor, Land. & Ten., Sec. 501.  This
principle is closely connected with, if not embraced in,
the definitely established rule that where the cause of
forfeiture is not single, but continuous in nature, the
waiver of one breach does not destroy the condition and is
not a waiver of another breach.  Thus conditions as to the
manner in which a farm should be conducted, as to the

payment of rent, as to the erection and maintenance of a fence, as to the use of the property, have been held to be continuous. Numerous other examples might be given. Note 11 L. R. A. N. S. p. 405; Taylor L. & T. Sec. 500; 24 Cyc. 1362, 1363; 18 Am. & Eng. Ency. of Law (2nd Ed.) 388; Doe v. Pritchard, 5 Barn. & Ad. 765, 27 E. C. L. 323, 110 Eng. Rep. 973; Granite Bldg. Ass'n v. Greene, 25 R. I. 48; 54 Atl. 792.

Why should not these principles be applied to a lease where the lessee as well as his assigns are forbidden to assign the lease? We know of no reason whatever. In German Am. Sav. Bank v. Gollmer, supra, it was said that a condition against assignment is in all cases necessarily single in its nature. But why is it? Three centuries of legal lore have never answered that question, though frequently asked, for the simple reason that no answer, to stand the test of logic and reason, can be given. We have already seen what the court said on that point in Brummel v. McPherson, supra, and in Moss v. Chappel, supra. In Dakin v. Williams, supra, the court said on that point:

"Now the common sense view of a license to the *lessee* only, and the one coinciding with the apparent intent of the parties would seem to be, that it merely enabled *him* to alien the premises, leaving the operation of the covenant in the lease in full force upon the assignee. To say that it empowered him to assign an absolute estate to the extent of his interest, free from the condition, is assuming the point in question. Was this the intent of the parties, as evinced by this contract ? * * * The doctrine appears to be founded upon the idea, that the condition cannot be divided or apportioned, though I am free to confess that I see no practical difficulty in this respect."

See also the comment in Williams v. Dakin, supra.

It would seem clear, as has been well stated by an author, that where assigns are included within the prohibi-

tion against assignment, the condition is necessarily continuous, because it applies in terms to persons who can only come under its force after one authorized breach. There is no difference in this respect between an assignment and a subletting, or the breach of any other covenant, held to be continuous in its nature. If a condition of that kind, binding the assignees, is destroyed by one consent, in the case of an assignment, it is destroyed by one consent in a case of subletting; if it is not destroyed in the latter case, as all of the courts hold, neither is it in the former.

In conclusion: Dumpor's Case has been called a "venerable error." Mindful as we are, that we are not here to legislate, but to declare the law, still we are not, we think, called upon to help in perpetuating that error. If the case was at one time a part of the common law of England, it has been so "modified by judicial decisions," as not to be a part of the common law of this state in contemplation of section 4547, W. C. S. 1920. The rule in the case mentioned is supported, as stated, by neither logic, reason, or, as intimated by Chancellor Wallworth, common sense. Whenever approvingly referred to, that has generally, or at least frequently, been done apologetically. Principles of law and justice ought not to stand in need of any apology. With two, or possibly four exceptions during the course of three centuries, the rule in Dumpor's case has not, as we have seen, been applied to facts similar to those in that case. The case has not been merely modified. Subsequent decisions have struck at its vital parts, and by refusing to apply its rule to facts not, in principle, distinguishable from the facts in that case, have disapproved of, and, in effect, overruled it. The name is left; the vitality is gone. Dumpor's case, in fact, remains but a specter of its former self. Gradually, but surely, its life has ebbed away; the attempt, at times, to revive it can, we think, in the very nature of things, be but sporadic,

so long as the temples of justice are in truth what we think they are.

It follows that the judgment of the lower court should be affirmed, and it is so ordered.

Potter, Ch. J., and District Judge Riner, the latter sitting in place of Kimball, J., concur.

NOTE—See 12 C. J. p. 184; 15 C. J. p. 937 (1925 Anno.); 31 C. J. p. 518 (1925 Anno.); 35 C. J. pp. 976, 979, (1925 Anno.); 984, 985, 1063, 1084 (1925 Anno.).