RECONSTRUCTION FINANCE CORPORATION v. KENTUCKY RIVER COAL CORPORATION.

No. 8514.

Circuit Court of Appeals, Sixth Circuit.

Oct. 10, 1940.

Clan Crawford, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, Joseph J. Bradley, of Lexington, Ky., and Clan Crawford, George Cameron, Harry E. Green, and William J. Hull, all of Cleveland, Ohio, on the brief), for appellant.

P. T. Wheeler, of Hazard, Ky., for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

### ARANT, Circuit Judge.

Appellee brought suit to enforce claims growing out of a lease of coal lands and mining equipment against the Gorman Coal Sales Company, joining the Reconstruction Finance Corporation, a superior mortgagee, as defendant, and praying the appointment of a receiver, the sale of property and other relief. From the decree ordering the sale of the leasehold and mining equipment as a unit, the Reconstruction Finance Corporation has appealed.

In 1932 appellee granted the Gorman Company the right to mine all the coal under certain described lands in Letcher County, Kentucky. The Gorman Company undertook to mine all that was merchantable and pay therefor a royalty of ten cents per ton or a minimum of $10,000 a year, beginning January 31, 1934. Miners' houses, camp buildings, tracks, tipples, cars, locomotives, machinery and supplies, then in use on the premises, were let to the Gorman Company at a rental of two and one-half cents per ton of coal mined and were to become its property when $25,000 had been paid. The Gorman Company covenanted not to encumber or assign either leasehold or equipment without appellee's consent. Appellee reserved a power to terminate the agreement if any default by the Gorman Company continued after sixty days' notice.

In 1938 the Gorman Company was in need of additional capital and secured conditional authorization of a loan in the amount of $57,459 from the Reconstruction Finance Corporation. To enable it to

give the security required, appellee entered into an "Amendatory and Supplemental Lease Agreement" with the Gorman Company, permitting the latter to mortgage both leasehold and equipment to the Reconstruction Finance Corporation, and simultaneously executed a bill of sale of the equipment to the Gorman Company in return for its promissory note for $16,916.-61, secured by a purchase money mortgage specified to be junior to that of the Reconstruction Finance Corporation. This agreement also provided that all of appellee's liens were subordinated to those of the Reconstruction Finance Corporation and that, until all moneys advanced by the Reconstruction Finance Corporation were repaid, the leasehold would not be cancellable and appellee would take no action to recover royalties or the purchase price of the equipment.

The Gorman Company was not successful even with the aid of the loan and abandoned operations in less than a year. The Reconstruction Finance Corporation refused to institute legal proceedings, but consented that appellee bring suit to secure the appointment of a receiver, on condition that the supplemental agreement continue in effect in all respects not affected thereby. Accordingly, appellee filed suit on August 17, 1939, praying that judgment be entered against the Gorman Company; that the Reconstruction Finance Corporation be required to set up its claims; that a receiver be appointed; that other creditors be enjoined from instituting or prosecuting suits; that liens and debts be marshalled and paid according to priority; and that the leasehold and equipment thereon "be sold as a whole and as a mining unit, subject to the terms and conditions of said original lease and amendatory and supplemental lease."

On September 9 the receiver, theretofore appointed, reported that he had taken over the assets as shown by the inventory attached; that he had hired a caretaker at $50 per month; that much valuable machinery and equipment in the mines was subject to substantial immediate deterioration and should be removed and stored; and that many of the buildings required immediate repair. He stated that there was no money available and suggested that he be permitted to borrow the amount needed upon receiver's certificates. On the same day appellee filed its amended complaint, reciting that neither the Gorman Company nor the Reconstruction Finance

Corporation had filed answer, and praying that the receiver be authorized to issue certificates in the amount shown by his report to be necessary. The Reconstruction Finance Corporation filed answer ten days later, setting forth the nature and extent of its claims, and, at the subsequent hearing, opposed issuance of receiver's certificates for repairs.

The court thought the interests of the creditors required immediate sale of the property and ordered the leasehold and equipment sold together as an operating unit. It said the two agreements must be read together, inasmuch as they "compose the whole lease agreement" now obtaining. The decree and judgment contained a description of the lands covered by the lease and summarized the transactions leading to execution of the supplemental agreement and the reasons for the order of sale.

The Reconstruction Finance Corporation does not challenge the court's power to order the sale nor claim that a sale would be unwise, but asserts that the rights, duties and liabilities of the purchaser are not clearly set forth in the decree and the sale would consequently be "chilled"; that references to the original lease and the supplemental agreement are indiscriminate and conflicting; and that the decree is erroneous for failure to designate and interpret the provisions in the two agreements applicable to the purchaser. It endeavors to support its claim of ambiguity by quoting isolated passages (italicized) from the following section of the decree:

"4. It is, therefore, ordered that said leasehold estate, together with the complete mining unit of said Gorman Coal Sales Company described in said original lease and amendatory lease and said mortgage and bill of sale, be sold with the sole and exclusive right to mine and remove all the mineable and merchantable coal in, upon and underlying said parcels and tracts of land upon and *subject to the terms and conditions of said original lease as amended by said amendatory lease;* and with all the rights, privileges and powers granted in said lease as amended for such purposes to the Gorman Coal Sales Company, its successors and assigns, as fully set out and provided in said lease as amended, *but subject further, however, to all of the reservations, exceptions, rights, powers, privileges and remedies provided for in said lease in favor of said Kentucky River Coal Corporation, its successors and assigns, and therein reserved and granted and conferred*

*upon the said Kentucky River Coal Corporation for its benefit and protection;* reference being hereby made to said original lease and amended lease, recorded in the Letcher County Court Clerk's office * * * for a more particular description thereof * * * and * * * the aforesaid bill of sale of the equipment and facilities thereon. All of which is hereby directed to be sold * * * and which property is in a general way described in said mortgages and receiver's reports filed herein, and to which reference is made for a more particular description of said property herein set out, and all of which is hereby referred to and made a part hereof as fully as if copied herein, together with the right to mine all of the mineable and merchantable coal in, upon and under said tracts of land, and to use all of said mining plant in doing so under the terms and conditions of the said lease, *reserving to the lessor all rights and remedies given by said lease and leasehold for the collection of its rentals and royalties,* and that possession of all of said property herein directed to be sold, shall be delivered to the purchaser upon confirmation of said sale. * * *

"(b) It is, therefore, further ordered by the Court that all of said properties, * * * be sold by said receiver, * * * together as an entirety and as one unit, free from all the said liens and incumbrances, and free from all right and equity of redemption * * *, the purchaser thereof taking *the lease and leasehold and all properties as an entirety and as a whole; agreeing from and after the day of sale to comply with the terms and conditions of the aforesaid lease and leasehold, by mining and removing the coal under and by the terms and conditions of the said lease, as though he was the original lessee in the first instance."*

■ We think the alleged ambiguity disappears when the decree is considered in its entirety; to us it seems clear that a purchaser will acquire the leasehold interest of the Gorman Company subject to the original lease as modified by the supplemental lease, for, as stated by the court, that is the only interest now owned by that company. See Deboe v. Brown, 231 Ky. 682, 22 S.W.2d 111. Likewise, the decree with adequate particularity construes the covenants and clauses now claimed to need further interpretation. It was not necessary for the court to spell out that the purchaser would hold the equipment free from the provisions of the original lease. Inasmuch as the supplemental agreement recognized the equipment as the "absolute" property of the Gorman Company, it was sufficient that the decree recited that ownership of the equipment was transferred to the Gorman Company by bill of sale; that appellee's lien thereon for rentals was "converted" into a junior mortgage; and that it was necessary to sell the properties free from all "existing liens and incumbrances and debts." We also think it sufficiently clear from the decree that the purchaser will be required to pay royalties, as provided in the original lease as amended, from the moment he procures the right of possession, but will be liable for none that had accrued before he came into privity of estate with the lessor. See Brown v. Loewenbach, 217 Wis. 379, 258 N.W. 379. And it would have been a work of supererogation to announce that the lessor's power to forfeit the lease for breach of covenant cannot be exercised as long as the Reconstruction Finance Corporation is not fully paid.

■ Relying upon the authority of Dumpor's Case, 4 Co.Rep. 119b, 76 East Rep. 1110, the Reconstruction Finance Corporation contends that the order of sale should have provided that the purchaser of the leasehold could encumber or assign it without appellee's consent. The trend of recent cases, however, is to limit strictly or even repudiate the rule in Dumpor's Case. Gazlay v. Williams, 6 Cir., 147 F. 678, 14 L.R.A.,N.S., 1199; Investors' Guaranty Corp. v. Thompson, 31 Wyo. 264, 225 P. 590, 32 A.L.R. 1071; Kendis v. Cohn, 90 Cal.App. 41, 265 P. 844. See Bordwell, English Property Reform and its American Aspects—Severance of Conditions—Dumpor's Case, 37 Yale Law Jour. 179. It would be inequitable to apply it here, inasmuch as the original lease expressly provided that the leasehold could not be encumbered or assigned without the lessor's consent and also that all covenants and conditions were to be binding upon successors and assigns, and the supplemental lease provided that all provisions of the original lease not inconsistent therewith were to remain in full force and effect. See Kew v. Trainor, 150 Ill. 150, 37 N.E. 223; Springer v. Chicago Real Estate Loan & Trust Co., 202 Ill. 17, 66 N.E. 850; Kendis v. Cohn, supra.

■ Finally the Reconstruction Finance Corporation contends that the leasehold and equipment should have been offered for

946

sale both separately and as a unit. The District Court was of the opinion that the sale as ordered was required by the provision in the supplemental agreement "That in the event of foreclosure of any mortgage or mortgages held by the Reconstruction Finance Corporation and sale held thereunder, such sale shall be of said equipment, mining plant, lease and leasehold rights, as a whole, or in other words, as one complete mining unit." Notwithstanding this provision, we are of the opinion that the court was required to exercise its discretion in the best interests of all parties concerned. It found that the properties could not be sold "with due regard to the protection of the rights of all the creditors and interested parties" except together as an entirety.

Nothing in the record suggests error in this finding. Wakenva Coal Co. v. Johnson, 234 Ky. 558, 28 S.W.2d 737; In re Franklin Brewing Co., 2 Cir., 249 F. 333. A court's decision on a matter of business policy is administrative in nature rather than judicial and cannot be disturbed on review unless there was abuse of discretion. Mercantile Trust Co. v. Farmers' Loan & Trust Co., 8 Cir., 81 F. 254. Of this, we see no evidence.

The judgment is affirmed.