### SCHERCK, RICHTER CO. v. DYSART et al.

### No. 11993.

Circuit Court of Appeals, Eighth Circuit.

Nov. 17, 1941.

Rehearing Denied Dec. 5, 1941.

B. L. Liberman, of St. Louis, Mo. (Lyle M. Allen, Burnett, Stern & Liberman, and Lewis, Rice, Tucker, Allen & Chubb, all of St. Louis, Mo., on the brief), for appellant.

David Levinson, of Chicago, Ill., and Rhodes E. Cave, of St. Louis, Mo. (Sonnenschein, Berkson, Lautmann; Levinson & Morse and Henry L. Kohn, all of Chicago, Ill., and R. H. McRoberts and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the briefs), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a decree entered in an equity receivership proceeding which approved the report of a bondholders' committee covering a proposed contract of sale of certain properties acquired by the committee in that proceeding. This proceeding may be considered as supplemental to and in aid of an equitable reorganization proceeding, the history of which will be found set out in great detail in the opinion of Judge Stone, speaking for this court, in Warner Bros. Pictures v. Lawton-Byrne-Bruner Ins. Agency Co. et al., 79 F.2d 804. This opinion is referred to as embodying the underlying facts out of which the present litigation arose. We shall not attempt a

restatement of the facts except so far as it may be necessary to an understanding of the events occurring subsequent to our former decision.

On April 20, 1925, the Central Properties Corporation executed a mortgage on its properties to secure an issue of first mortgage bonds in the amount of $4,500,000. It later sold and transferred this mortgage property to the St. Louis Properties Corporation, which company under date January 15, 1928, executed a second mortgage mortgaging this same property subject to the first mortgage to secure its bonds in the amount of $850,000. On August 19, 1932, an equity suit in the nature of a creditor's bill was brought by Lawton-Byrne-Bruner Insurance Agency against the St. Louis Properties Corporation, and on August 22, 1932, a receiver was appointed in that suit. Following this proceeding, and on October 8, 1932, suit was brought to foreclose the first mortgage and at that time there were outstanding and unpaid bonds secured by that mortgage in the amount of $4,050,000. A suit was brought to foreclose the second mortgage, so that there was then pending the three suits, one a creditor's bill and the other two mortgage foreclosure suits. On November 18, 1932, these three suits were consolidated and the receivership in the creditor's bill suit was extended to include all of the properties described in the two mortgages sought to be foreclosed. At the time of the commencement of the suit to foreclose the second mortgage, there were outstanding bonds secured by that mortgage in the amount of $840,000. On December 28, 1933, decree was entered in the consolidated causes for foreclosure of the two mortgages and sales of the mortgaged properties. In the decree of foreclosure the court reserved jurisdiction to pass upon any plan of reorganization of the Central Properties Corporation that might be filed. On March 28, 1934, a committee known as the Central Properties First Mortgage Bondholders Committee was permitted to intervene, and on June 8, 1934, filed a plan of reorganization, the details of which need not here be related as they appear in the prior opinion of this court. Warner Bros. Pictures v. Lawton-Byrne-Bruner Ins. Agency Co., supra.

Skouras Bros. Enterprises, Inc., had guaranteed payment of the first mortgage bonds, and the plan for reorganization provided that if any recovery should be had on this guaranty, the amounts recovered should be distributed pro rata to the holders of the certificates of deposit to be issued to the first mortgage bondholders. The committee was to continue in existence and to perform its duties until the guaranty had been liquidated, or the committee had exhausted its efforts to enforce the guaranty. The court reserved jurisdiction for the purpose of supervising and carrying out the plan of reorganization. On appeal from the order and decree, with certain modifications not here important we affirmed. Warner Bros. Pictures v. Lawton-Byrne-Bruner Ins. Agency, supra.

On May 25, 1937, the Central Properties First Mortgage Bondholders Committee filed a report of the result of its efforts to realize on the guaranty of the Skouras Bros. Enterprises, Inc. That report showed that in enforcing the guaranty of Skouras Bros. Enterprises, Inc., the committee had acquired property described as follows: 12,431 shares of Class A capital stock of St. Louis Amusement Company; 13,929 shares of Class B capital stock of St. Louis Amusement Company (this being 52% of the stock of the St. Louis Amusement Company); 600 shares of the capital stock of Buland Amusement Company; open account against Buland Amusement Company in the amount of $4,727.65; 519 shares of the capital stock of Education Pictures, Inc., $34,000 par value of first mortgage notes and trust deed securing the same on the West End Lyric Theater, St. Louis, Missouri; $45,653.83 par value of second mortgage notes and trust deed of St. Louis Amusement Company securing the same by the conveyance of various properties of the St. Louis Amusement Company, and some cash.

The committee presented to the court a plan for distribution of this recovery to those entitled to share in it. The plan may be summarized as follows:

1. That the committee would organize a corporation to be known as the Ambassador Investment Corporation, with an authorized capital of 36,557 shares of preferred stock of the par value of $12 per share and with 100 shares of common stock of the par value of $100 per share.

2. That the committee would transfer to the new corporation the following assets:

12,431 shares of Class A capital stock of St. Louis Amusement Company;

13,929 shares of Class B capital stock of St. Louis Amusement Company. This stock constituted 52% of the outstanding stock of the St. Louis Amusement Company and was

subject to an option from the committee dated July 30, 1936.

600 shares of capital stock of Buland Amusement Company;

An open account for $4,727.65 against Buland Amusement Company;

519 shares of the capital stock of Education Pictures, Inc.

3. That the new corporation would issue and deliver to the committee 36,557 shares of its preferred stock and 100 shares of its common stock.

4. That the new company would assume and agree to pay the Arthur note and interest aggregating as of July 31, 1941, $12,874.46, and indemnify the committee against any liability thereon.

5. That the committee would distribute the 36,557 shares of the preferred stock of the new corporation as follows: 1875 shares to C. M. Turley in liquidation of his claim of approximately $15,000; the balance of 34,682 shares would be delivered by the committee to the holders of certificates of deposit at the rate of one share of preferred stock for each $100 par amount of bonds represented by the certificates of deposit.

6. That other assets of the committee, consisting of $41,000 par value of first mortgage notes and trust deed on West End Lyric Theater, St. Louis, $51,000 par value of second mortgage notes and trust deed of St. Louis Amusement Company with interest, and common stock of the proposed new corporation, will be transferred to the Ambassador Building Corporation for the following consideration:

(a) Cancellation of the indebtedness of the committee to the Ambassador Building Corporation in the amount of $35,000, and on Jeffries note and interest (the amount of which is not shown);

(b) Payment by the Ambassador Building Corporation to the committee of $22,000 with which to discharge the remaining obligations of the committee, and, in addition, payment by the Ambassador Building Corporation of the court costs and expenses involved in the issuance and distribution of the new securities;

(c) Agreement by the Ambassador Building Corporation to hold the committee harmless against any claim arising out of the plan;

(d) Agreement by the Ambassador Building Corporation to offer to purchase the shares of the preferred stock in the new company from holders of certificates of deposit who, prior to May 1, 1940, had sold the bonds of the Ambassador Building Corporation distributed to them under the original plan of reorganization, at a price of $8 per share of preferred stock, the offer to remain open 20 days after the date on which the offer was communicated to the holders of certificates of deposit.

It should be explained that the committee, in attempting to recover on the guaranty of Skouras Bros. Enterprises, Inc., determined that it was advisable to acquire certain of the assets of Skouras Bros. Enterprises, Inc., which in the meantime had gone into bankruptcy, and in doing so borrowed money with which to make the purchase.

The preferred stock in the Ambassador Investment Corporation was liquidating stock upon which no dividends were to be paid except by way of liquidation, and no dividends could be paid on common stock unless and until the preferred stock had been fully liquidated. No voting rights were granted the preferred stock and all voting power was vested in the common stock. Priority was allowed the preferred stock in the event of liquidation or dissolution to the extent of $12 per share. Whenever there should be an accumulation of net profits, surplus or capital of $74,000 in cash or liquid securities, the liquidating dividend on the preferred stock of $2 per share became payable.

The Ambassador Building is a seventeen-story down town office building, containing a large theater. The St. Louis Amusement Company operates twenty-six second-run moving picture theaters in St. Louis. In the original reorganization plan, a lease of the theater portion of the Ambassador Building to Allan Snyder was reported and considered as a part of the plan. Rentals were to commence at $2,350 per week and to increase to a maximum of $3,050 per week, with certain other possible increases dependent upon gross receipts. Fanchon and Marco acquired this lease by assignment from Snyder. They also acquired 42% of the stock of the St. Louis Amusement Company owned by Warner Brothers, as well as an indebtedness of $110,000 owed by the St. Louis Amusement Company to Warner Brothers. Fanchon and Marco were experienced managers of theater properties and entered into a contract with the committee whereby it was

agreed that if the committee would acquire, as it did, the 52% of the stock of the St. Louis Amusement Company, the company would grant to Fanchon and Marco the right to purchase the stock at the best bona fide price offered by others, but it was expressly provided that the option was not to be operative in case of a sale to the Ambassador Theater Building Corporation, or "to a corporation which said companies * * * may create for the purpose of taking title to said stock." In the same contract, the committee agreed with Fanchon and Marco to co-operate with them in procuring a contract for Fanchon and Marco for the management of the St. Louis Amusement Company, with provision that if Fanchon and Marco should default in the performance of the lease to the Ambassador Theater, the management contract would thereupon terminate. After the committee acquired the stock of the St. Louis Amusement Company at the bankruptcy sale, the management contract was entered into, which provided that if the lease on the Ambassador Theater were terminated, the St. Louis Amusement Company should have the right to cancel the management contract upon giving Fanchon and Marco thirty days' written notice of intention so to do.

Scherck, Richter Company is the owner of certificates of deposit issued by the Central Properties First Mortgage Bondholders' Committee, having an aggregate face value of $11,400. It appeared at the hearing on the proposed plan of the committee for distribution of the realized assets. It did not object seriously to the proposed plan. Counsel, appearing at the hearing, among other things said:

"I do not understand that we are complaining. Mr. McRoberts is correct, that we are not making any complaint of the adequacy or inadequacy of the $8.00, we make no point of that.

"Our attitude is simply that we have a plan which we think confers better security and better protection, to the certificate holders, in that they will have behind their stock not only the stock of the St. Louis Amusement Company, which the Committee owns, but also this other stock of the St. Louis Amusement Company which Fanchon & Marco owns."

In our view of the case it is not necessary to set out in detail the alternative plan of Scherck, Richter Company. It proposed to acquire from the committee (1) the same St. Louis Amusement Company stock; (2) the same other securities of questionable value; (3) the same first mortgage notes of the West End Lyric Theater; (4) the same second mortgage notes of the St. Louis Amusement Company. The plan may be summarized as follows:

1. The organization of a corporation with authorized capital as follows:

a. 34,682 shares of 5 per cent prior preferred stock of the par value of $15 per share entitled to priority with respect to dividends at the rate of 5 per cent per annum on the stock and upon liquidation at the rate of $15 per share. The stock to be callable in whole or in part at any time on not less than thirty days' notice. A sinking fund of 25 per cent of the net earnings after the payments of dividends on prior preferred stock and the preferred to be set up for the purchase and redemption of outstanding prior preferred stock.

b. 34,700 shares of 5 per cent preferred stock (second preferred) of the par value of $15 per share, subordinate to prior preferred and entitled to priority over the common stock and callable at $15 per share after all the prior preferred stock shall have been retired.

c. 1,000 shares no par value common stock. This stock carries all the voting rights.

2. The bondholders' Committee would transfer to the new corporation the 52 per cent interest in the St. Louis Amusement Company, the $41,000 of first mortgage notes on the West End Lyric Theater and $51,000 of second mortgage notes on the St. Louis Amusement Company, and the miscellaneous assets for the following considerations:

a. The Bondholders' Committee would receive from the corporation 34,682 shares, being the entire issue of the 5 per cent prior preferred stock in payment for the 52 per cent interest in the St. Louis Amusement Company, which would permit the Committee to distribute to the holders of certificates of deposit one share of $15 five per cent prior preferred stock for each $100 in face value of bonds evidenced by certificates of deposit.

b. For the first mortgage notes on the West End Lyric Theater and the second mortgage notes on the St. Louis Amusement Company and the miscellaneous assets, the new corporation would pay to the

Bondholders' Committee an amount in cash not to exceed $90,000 as together with the cash on hand held by the Committee would be necessary to pay the full indebtedness of the Bondholders' Committee.

3. Scherck, Richter Company will subscribe for 6,668 shares of the second preferred stock and for which it will pay $100,020 in cash, being at the rate of $15 per share of the par value of the stock, and would receive, also, 500 shares of the new par common stock.

4. Fanchon & Marco will transfer to the new company the 42 per cent interest in the St. Louis Amusement Company owned by it and will receive therefor 28,032 shares of the second preferred stock, which is at the same rate as the shares of the first preferred stock issued to the holders of Certificates of Deposit, and will also receive from the new corporation 500 shares of the new par value common stock. The plan recites that Fanchon & Marco Enterprises, Inc., agreed to make the exchange on that basis and also agrees that in the event the plan is approved by the Court that it will release the Bondholders' Committee and the new corporation from the option held by it in the agreement with the Committee dated July 30, 1936.

5. As part of the plan an agreement has been made between the Scherck, Richter Company and Fanchon & Marco Enterprises, Inc., and Fanchon & Marco Service Corporation that in the event the plan is accepted and approved by the court the management contract held by the Fanchon & Marco Service Corporation with the St. Louis Amusement Company will be revised so as to eliminate the provision in the contract for compensation based on percentage of gross income and to substitute a plan of compensation based in part on a fair percentage of net earnings to be mutually agreed upon by the parties and the effect of which is to increase the net earnings of the St. Louis Amusement Company available for the distribution to stockholders.

It is contended that the plan approved is not fair and equitable. It is first to be noted that the objections filed by appellant below are not primarily objections to the proposed plan, but constitute a claim that the plan proposed by appellant is a more fair and equitable one.

It is here argued that the holders of the certificates of deposit in fact own the 52% of the shares in the St. Louis Amusement Company and that no others have any beneficial interest therein. The Ambassador Building Corporation, which will receive the common stock in the new corporation, it is claimed can not be identified with the holders of the certificates of deposit because about 30% of the new bonds issued by that corporation are held by persons who have bought the bonds since the original plan was consummated, and who have no claim to the 52% interest in the St. Louis Amusement Company. Of the stock authorized and issued under the original plan of reorganization, 25% was allotted to second mortgage bondholders and 10% to the management. This 35% of the stock was also represented by voting trust certificates, and these interests have no claim on the 52% of the stock in the St. Louis Amusement Company. Advantages from the committee's plan will be derived by those who have no interest in the assets dealt with, in that (1) control of the St. Louis Amusement Company will pass to the voting trustees of the Ambassador Building Corporation, who, under the voting trust agreement, function until 1953; (2) holders of income bonds of the Ambassador Building Corporation in an amount of approximately $1,000,000, representing 30% of the outstanding bonds, will share equally with those who are holders of certificates of deposit in all the benefits and advantages derived from the ownership of the common stock in the Ambassador Investment Corporation; (3) subject only to the superior rights of the income bondholders, the holders of voting trust certificates for 35% of the stock of the Ambassador Building Corporation allotted to second mortgage bondholders and to management, will participate in the benefit and the advantages derived from the ownership of the common stock in the Ambassador Investment Corporation.

It is true that the certificates of deposit holders are entitled, as against the other interests, to full participation, exclusive as against the others, in the assets available until they are made whole. Consolidated Rock Products v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Case v. Los Angeles Lbr. Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237. The arrangement for issuing common stock appears to be for the purpose of simplicity of control and management, rather than with the idea of any financial ad-

vantage to accrue, at least for a period of several years. Such control, if exercised for the benefit of certificate holders, will also be for the benefit of the bondholders and other interests. Their relations are similar and their interests mutual. The important question is whether property rights of substantial value and substance are being invaded, rather than the abstract question of control and management. As has already been observed, appellant conceded in the lower court that $8 per unit for each certificate holder who had sold his bonds was a fair price and appellant has sold its bonds. The lower court found that $12 was a fair consideration for the preferred stock and the evidence sustains that finding. We think that no substantial property right is being taken from certificate holders as such by the plan approved. The bonds of the Ambassador Building Corporation are selling for about $30 per $100 of par value.

It is further contended by appellant that "on the basis of present earnings and the requirements for principal payments on the indebtedness of the St. Louis Amusement Company, it will be impossible to make any payments on the liquidating stock for at least ten years. It will require another ten to fifteen years before this preferred stock can be liquidated." This conclusion is probably somewhat exaggerated, but the argument demonstrates that no substantial value has been taken from a certificate holder as such by the plan approved by the lower court. Mr. Scherck, testifying for appellant, admitted that under appellant's plan, no dividends could be paid on first preferred stock as offered, without a favorable revision of the Fanchon and Marco contract, which there was no assurance could be obtained. He also admitted that based upon previous earnings, it would be impossible to pay any dividends. It must be remembered that in the original acquisition of the Skouras assets, there was a purpose to protect the first mortgage bondholders and the subsequent changes in ownership of the various rights acquired should not be permitted to divert that original basic purpose.

It is suggested that Mr. Dysart, who was chairman of the bondholders' committee and president of the Ambassador Building Corporation, occupied a dual and antagonistic position of conflicting loyalties. It should first be observed that no such contention was urged in the lower court. In any event, the matter which we are asked to review is the action of the court in approving the plan. The court found the plan to be fair and equitable. We can not say that the plan proposed by appellant is more fair and equitable than the plan proposed by the committee. The lower court, well acquainted with all the facts bearing upon that question, and hence peculiarly well qualified to determine the comparative fairness of the two plans, has found in favor of the committee's plan, and specifically found that, "The alternative plan submitted by Scherck, Richter Company is not fair and equitable, and does not afford due recognition to each class of holders of certificates of deposit and creditors, stockholders and holders of voting trust certificates of Ambassador Building Corporation."

The question presented to the lower court was under the circumstances disclosed by this record, a question of business policy calling for the exercise of business judgment. Its decision should not be disturbed in the absence of an abuse of discretion. Warner Bros. Pictures v. Lawton-Byrne-Bruner Ins. A. Co., supra; Kansas City Terminal Ry. Co. v. Central Union Trust Co., 8 Cir., 28 F.2d 177; Mercantile Trust Co. v. Farmers' Loan & Trust Co., 8 Cir., 81 F. 254; Reconstruction Finance Corp. v. Kentucky River Coal Corp., 6 Cir., 114 F.2d 942.

Whatever merit the Scherck, Richter Company plan may possess, we are of the view that considering all factors, including the question of retention of control, the provision for payment of the certificate holders in cash, if they so elect, justified the court in the action taken. The court was familiar with all details and aspects of the problem before it, and its decision should not be disturbed. The decree appealed from is therefore affirmed.